### THE OVERSEERS OF THE POOR OF WATERFORD *vs.* THE OVERSEERS OF THE POOR OF BROOKFIELD.

That a motion to quash, pointing out several distinct causes, can avail only when those causes appear of record.

That such facts as do not appear of record must be pleaded in a traversable form.

When a warning directs a constable to warn several persons to depart the town, his return must show that he left a copy with each.

By the exceptions taken at the jury trial in this cause, in the county court, and allowed by the judges, it appears that one *Obadiah Rice, Jun.* said to be a stranger in *Waterford*, was sent by virtue of an order of removal to *Brookfield*—the order alleging that to be the place of his last legal settlement. From this order an appeal was taken to the county court, and duly entered in said

court; and there the overseers of the poor of *Brookfield* filed a <span style="float:right">CALEDONIA,<br>*March*,<br>1829.</span> motion to quash said proceedings, assigning several reasons :

<span style="float:right">Waterford<br>*vs.*<br>Brookfield.</span>

1st. That the justices making said order of removal did not examine said pauper touching his ability and last place of legal settlement, or for any other purpose.

2d. That the justices in their order of removal have alleged that they did not examine said pauper.

3d. That the justices, making the order of removal, adjudged the pauper to be *non compos mentis*, without examining the said pauper.

4th. That the justices did not leave, or cause to be left, a copy of their order of removal under their hands with the overseers of the poor of *Brookfield*, nor with either of them, within thirty days from the making of the order, nor at any other time before or since:

5th. That the officer removing the pauper returned on his warrant that he left a true and attested copy of the original order of removal as the law directs with *John Wheatly*, overseer of the poor of *Brookfield* ; and it does not appear that a copy of the original order, attested by the justices, as makers of said order, was ever so left with said overseer.

The motion was overruled by the county court. The appellants then pleaded that the pauper was unduly removed, without alleging any reason in the plea, and an issue, joined to the court, was tried, and exceptions were taken and allowed, by which it appears that the whole dispute upon the merits rested on the sufficiency of the proceedings on the part of *Warterford*, warning out said pauper ; it being agreed that he once was legally settled in *Brookfield*, but afterwards became legally settled in *Waterford*, unless prevented by force of the warning. Said proceedings were objected to, but admitted, and are as follows :

" *State of Vermont,*   } To either constable of *Waterford*, in
" *Caledonia County, ss.* } the county of Caledonia, greeting :

" You are hereby required to summon *Obadiah Rice*, and
" *Hannah Rice*, his wife, and *Obadiah Rice, jr.* now residing in
" *Waterford*, to depart said town. Hereof fail not, but of this
" precept, and your doings herein, due return make according to
" law.

" Given under our hands at *Waterford*, this 21st day of
" December, 1809.

" <em>Sylv's. Hemmingway,</em> &#125; Selectmen of<br>
" <em>Joseph Felch,</em>     }   <em>Waterford.</em><br>
" <em>Eben. Farnham,</em> &#125;

" *Caledonia, ss. Waterford,* } Then served this warning by
" January 2, 1810.     } leaving a true and attested co-

AA

CALEDONIA,
March,
1829.

———

Waterford
vs.
Brookfield.

"py with the within named persons, with my return hereon there-
"on endorsed :                          Attest, *Walter Buck*, Const."
                                        "*Waterford*, January 4, 1810.
"The above is a true record.
                        "Attest, *Sylv's Hemmingway*, town clerk."
                                "*Waterford*, March 11, 1828.
"The above is a true copy from the record.
                        "Attest, *Sylvanus Hemmingway*, town clerk."

There was nothing upon the record which showed that the de-
cision, overruling the motion to quash, had been removed to this
Court; but the counsel agreed to consider the whole as regularly
before this Court, and both questions were argued together.

*Mr. Peck, for defendants.*—1. It does not appear from the re-
cord that the complaint of the overseers of the poor of *Waterford,*
*that the pauper had become chargeable,* was in writing.   A com-
plaint in writing was necessary to give the justices authority to
make the order of removal.   This was contemplated by the act,
a form of complaint being given.   *Stat.* 324.—6 *Mass.* 501.

2. The pauper had no notice of this proceeding, and was not
examined, but was yet adjudged *non compos mentis.*   The stat-
ute is imperative that the pauper shall be notified and examined.
*Stat.* 370, *sec.* 3.   How could the justices legally adjudge the
pauper of unsound mind without examination?

3. The statute requires that when an order of removal is made,
an attested copy of such order shall be left with some one of the
overseers of the poor of the town to which such pauper shall be
removed within thirty days from making the order.   *Stat.* 383,
*sec.* 5.—1 *Aikens' Rep.* This copy, it would seem, should be cer-
tified by the justices making the order ; for the record does not go
out of their hands.   What authority has the officer making the re-
moval, to give a certified copy of the record ?   He knows nothing
of the record, and can have no access to it.   All that comes into
his hands is the warrant, a copy of which he is empowered to give.
In the present case the person removing the pauper was direct-
ed by the warrant to deliver to one of the overseers of the poor of
*Brookfield* a true and attested copy of the order of removal :
and in his return he certifies that he " delivered a true and at-
tested copy of the original order of removal as the law directs."
From these facts, taken in connection, it is evident that the officer
certified the copy.   The fact that the copy of the order was cer-
tified by the justices should in all cases appear affirmatively, and
not be left to inference and conjecture.   But admitting that the
copy of the order, which the officer returns he lodged with the
appellants, was duly certified by the justices ; yet there is no le-

gal evidence in the case that this copy was left with the appellants, the officer having no authority to certify this fact.

CALEDONIA,
March,
1829.

Waterford
vs.
Brookfield.

4. The service of the warning of the pauper to depart the town of *Waterford* made in 1809, and the record of the warning, are defective. The warning is to summon " *Obadiah Rice, Hannah Rice,* his wife, and *Obadiah Rice, jr.* to depart said town," &c. The return of the officer is, that he served the " warning by leaving a true and attested *copy with the within named persons.*" From this return it is evident that the warning was served on all the individuals named in it, by leaving a single copy ; and no presumption can be raised that this copy ever went into the hands of *Obadiah Rice, jr.* Again, the officer returns he left with the individuals named in the warning a " *true and attested copy.*" A copy of what ? Perhaps it was a copy of the warning : it might have been a copy of something else. This is a case of strict legal right between the parties : there is no equity in the case, and nothing can be taken by intendment. The manner of serving warnings should be stated in the return with the utmost particularity. *Brayton's Rep.* 181, *no.* 6, 183, *no.* 10.

It does not appear from the record that the proceedings were recorded within the year. The record is, " *Waterford,* January 4, 1810. The above is a true record : attest," &c. A record of what ? To hold that it is a record of the warning, is founding this assertion upon mere presumption, as this fact is not averred. This record is very similar to the one that came up in evidence in a case between *Washington* and *Chelsea,* tried before *Judge Prentiss* in *Orange* county, December term, 1827. The record in that case was, "Rec'd for record, Feb'y. 15, 1808 : a true record : attest, &c." This record was rejected.

*Mr. Davis, for the plaintiffs.*—The first exception is that the warning out in *Waterford* is illegal.

One objection urged against it is, that it does not sufficiently appear that the warning and constable's return thereon were put on record by the town clerk. By the 1st section of the act of 1801, it was made the constable's duty to return the precept, with his proceedings thereon, to the town clerk, within eight days after service, and it is made the clerk's duty to enter both on record ; but the statute does not say when, tho' it has often been decided that it must be done within one year. Although the certificate of the town clerk may not be very formal, yet it clearly appears that on the 4th January, 1810, within two days after service, both the warrant and officer's return were on record ; for immediately below both is the certificate that " *the above is a true record.*" It is clear, then, that the officer and town clerk

CALEDONIA,
March,
1829.

Waterford
vs.
Brookfield.

both did their duty. The court below admitted this paper, and it is agreed, if they did so properly, it puts an end to the case, so far as the issue of duly or unduly removed, or the merits, is concerned. For the bill of exceptions shows that it was agreed, that if this warning out in *Waterford* is to be considered legal, then the pauper's last place of settlement was *Brookfield*, and he was of course duly removed.

Another objection now urged by counsel seems to us of little weight. They say the officer's return shows that he left but one copy with the three persons named in the warning. The officer says he left a true and attested copy, &c. with the within named persons. This must necessarily mean with each of them.

We now proceed to notice the motion to quash, made on the ground of some alleged irregularities in the proceedings relative to the order of removal.

The three first reasons may all be considered at once, as they are nearly allied to each other. They are that the justices did not examine the pauper touching his ability, &c. that they allege they did not examine him—and that they adjudged him *non compos* without examination. These objections are founded, it is presumed, on the 3d section of the act respecting *legal settlements, &c. (Stat. p. 370)* authorising two justices to give a warrant to the constable, commanding him to bring the stranger before them *to be examined*; and said justices shall *examine such stranger*, &c. and any other persons, &c. Defendants' counsel insist that this is, under all circumstances, an indispensable duty, whether any information can be drawn from the pauper or not, or whatever other evidence they may possess. Plaintiff contends that the statute is to receive a reasonable construction, and one which will leave it discretionary with the justices to examine the pauper, if it can be done, or is necessary, otherwise not. Suppose the pauper an idiot, an infant below discretion, a deaf and dumb person, a maniac, a dotard, &c. it is plain that it would be as ineffectual to put questions to him on the subject of his last settlement, as to a statue, and the law that should require it would be as absurd as ridiculous. In truth, the very import of the term *examine* implies that the person examined has intelligence enough to impart some information to the examiners. If the direction to examine implies then that some information may be acquired, it is obvious that in cases like the present, no examination *can* be had; and should orders of removal be granted on this ground, it would be equivalent to a decision that paupers of the above description, embracing that class most likely to become paupers, could in no case be removed under our law. *Braytons' Rep.* 178, *St. Albans* vs. *Georgia.*—1 *Aikens' Rep.* 251, *Hartland* vs. *Williamstown.*

CALEDONIA,
March,
1829.

Watorford.
vs.
Brookfield.

*Fourth and fifth objections.*—These are that no copy of the order of removal, *duly attested,* appears to have been left with the overseers of defendant town, agreeably to the 5th section of the act passed November 4, 1817.　The answer is, that the return of the officer follows exactly the words of the law in saying, that he left *an attested copy of the order of removal* with one of the overseers. He does not, to be sure, say how it was attested, nor does the statute require that he should.　The law simply requires an attested copy to be left, and here the officer returns under oath that he left *such a copy.*　It is true, that the copy might have been left by any other person as well as by the officer making the removal, and his certificate, sworn to in the manner here adopted, would doubtless be sufficient.　The usual and proper mode is the one adopted here, where the same person who makes the removal, also leaves the copy, and verifies one fact in the same manner as the other.

The opinion of the Court was delivered by

HUTCHINSON, J.—The motion to quash in this case assigns several reasons, supposing them apparent upon the record.　The three first of these may be considered together.　They are that the magistrates did not have the pauper before them and examine him, but adjudged him *non compos mentis* without examining him.　On inspection of the record it appears that the pauper was not examined before the magistrates, and they assign as a reason for it that he was *non compos mentis.* If this reason existed in point of fact it was valid, and the record for this purpose must all be taken together.　It is referred to as the evidence upon which the motion is predicated.　But it is urged that the magistrates could not have known this judicially without an examination.　This is true in the sense that the record is not conclusive of the fact.　They might have seen the pauper daily, and known him to be wholly incapable of giving testimony—and their assigning this reason is *prima facie* good.　It is good when the exception is taken in the manner now presented.　This motion is in nature of a special demurrer, relying upon defects apparent upon the record.　In that view the record is not defective in this point.　If the overseers of *Brookfield* had felt disposed to contest this fact, and plead, in a traversable form, that the proceedings ought to be quashed or abated because the pauper was of a sound mind, and was not *non compos mentis,* as the proceedings suppose; this might be replied, and an issue formed upon the fact of his soundness of mind ; and such an issue must be tried without prejudice from the recital by the magistrates.　Pleadings were so formed in a case in *Bennington* county.　So if they would

CALEDONIA,
March,
1829.

Waterford
vs.
Brookfield.

plead that the pauper was not chargeable, or not likely to become chargeable, to *Waterford,* this might in like manner be pleaded in a traversable form.   So of the matters that compose the fourth and fifth exceptions in the motion ; these are no defects in the proceedings, for they need not appear of record.   The statute of 1817 requires a true and attested copy of the order to be left with the town against which the order is made within thirty days.   It does not say by whom it shall be attested ; but the magistrates are the only persons who can properly attest copies of their own order.   They to be sure, in this case, have, in their warrant, directed the constable to deliver a true and attested copy of said order ; and he returns that he has done so, saying nothing by whom attested.   But the whole record might as well be silent upon the subject : for the copy may as well be sent by any other person as the constable.   And when the question is raised by any proper plea, whether such copy has been delivered, the fact may be proved by the person delivering it.

Where the removal takes place, and copies are left under the old statute within thirty days from the making of the order, it seems useless for the statute of 1817 to require another copy to be delivered.   It would have been well if the last statute had made its requisition only in cases where the removal was not effected within the thirty days.   Were the question entirely new, I think we should now so construe that statute ; though its requisitions seem peremptory.   The question was raised at *St. Albans,* and the majority of the Court felt bound by the decisions several times mentioned by *Chief Justice Skinner,* as having been made before we were associated with him.

Whatever, therefore, might be the result, if matters alluded to in this motion had been put in issue by proper issuable pleas, they cannot avail as mere defects in the record of the proceedings.

The remaining question arises upon the sufficiency of the record of the warning out of the pauper.   The objection to the time of the recording does not seem supported by the record.   The warning bears date December 21st, 1809.   The officer's return bears date January 2d, 1810—At the bottom of all this the town clerk adds to his record, " *Waterford,* Jan'y 4th, 1810.   The above is a true record.   Attest, *S. H.* town clerk."   The attestation of the copy follows in due form.   *That the above is a true record* means that it is a true record of that of which it purports to be a record— and it clearly purports to be a record of the warning and the officer's return of his service of the same.   The case between *Chelsea* and *Washington,* cited to this point, and supported by the copy of the exceptions, may have been decided upon another

CALEDONIA,
March,
1829.

Waterford
vs.
Brookfield.

ground: and the copies produced do not show the reasons of the decision. We discover nothing why the recording was not regular, and in time, in that case. But the officer's return has a defect which might have given occasion for a decision against the warning. The officer was commanded to warn *John Norris, Hannah Norris*, wife of *John Norris*, and their whole family, to depart the town. The officer returned that he served it by leaving a true and attested copy, &c. in the hands of the said *John Norris'* wife, without saying whether she was a person of sufficient discretion, or whether she was resident at the house of the said *John Norris*. This, as a warning out of *John Norris*, was defective according to several decisions of this Court for years past.

The warning, in the case before us, being sufficiently recorded, we proceed to examine the warning itself, and the officer's return. The warning is signed by three selectmen, and directs the constable to warn *Obadiah Rice, Hannah Rice*, his wife, and *Obadiah Rice, Jun.* to depart, &c. The constable has returned thereon that he served this warning by leaving a true and attested copy with the within named persons, with his return thereon endorsed. It is objected, that he says he left a copy, without saying of what. It is true, he does not say it expressly, but the intendment is so strong it cannot be misunderstood. Served the warning, by leaving a copy, cannot be supposed a copy of any thing except the warning. We got over an objection exactly similar in *Windham* county, a year ago.

But, with whom did he leave this copy? It is answered that he left one with each of the persons named. This is not contained in the return, either by express words, nor by any forcible or very natural intendment. Nor does it appear with whom he left one copy. The statute says the service shall be made as directed in the service of summons in a civil suit. That direction is, that the officer shall deliver to the defendant a true and attested copy of the writ, with his return thereon endorsed ; or, in the absence of the defendant, leave such copy at his usual abode with some person of sufficient discretion: and after naming some other case, adds, and the manner of such service shall particularly be made to appear in the officer's return. It is obvious that all this must be done for each defendant. So have always been the decisions. At *St. Albans*, a year since, there came before this Court, a suit brought against *Hunt & Reynolds*, upon contract. [1 *Vermont Rep.* 148.] The officer returned that he served it by leaving a copy, whether with the defendant, or with the defendants, we are not sure, but we inferred from the return that there was but one copy. This came up on a plea in abatement,

CALEDONIA,
March,
1829.

Waterford
vs.
Brookfield.

and the writ was abated.  *Hunt & Reynolds* were partners in trade, and the suit was brought against them as partners ; and if the effect of the judgment could only have been to charge the property of the firm, we should not have abated the writ.  But such judgment would go as effectually against the individual property, and the persons of each defendant, as against the property of the firm.

The difficulty in the case before us resulted from the issuing of one warning against several persons.  When that is done, it must appear that service was made upon each.  It would be sufficient in this case, if it appeared that the copy was left with the pauper in question ; but that does not appear.  "The within named persons," to which the return might possibly allude, were three paupers and three selectmen.  Though leaving copies with the selectmen would not vitiate the service made on the paupers, yet, their names being within, forcibly presents the uncertainty of the officer's return, when used to show a warning out of the pauper in question.

According to repeated and uniform decisions, there is no equity between towns thus litigating about the support of paupers.  The town that would throw its burdens of this character upon any other town, must do it by virtue of some positive law, and must show themselves to act substantially according to the provisions of that law.  The town of *Waterford* now claim under such positive law, but do not show that their warning was served agreeably to the provisions of that law.  The judgment, therefore, of the county court must be reversed, and

A new trial granted.

Upon a suggestion from the Court that the plea in this case, that the pauper was unduly removed, was alike defective as a plea, that the plaintiff ought to be barred, without saying more ; the counsel for *Brookfield* moved for leave to amend said plea, by adding the reason, to wit, that *Brookfield* was not the place of the pauper's last legal settlement.  This was granted without objection.

*Davis & Fletcher*, for *Waterford*.
*Peck*, for *Brookfield*.