TOWN OF LANDGROVE *v.* TOWN OF PLYMOUTH AND SAME *v.* SAME.

*Removal of Pauper. Order of Removal. Warrant of Removal. Service of Process. Gen. Sts. c. 127, s. 39. Sts. 1864, No. 18. Motion to Quash. Conclusiveness of Officer's Return. Presumption.*

Where a pauper is removed within thirty days of the making of the order of removal, service of a certified copy of the order, with order of notice appended, is not required ; but a certified copy of the warrant of removal containing a recital of the record of the order, showing that the proceedings have been legal and valid from their inception, and that the justices had jurisdiction in the premises, must be left with the overseer of the poor of the town to which the removal is made ; and the want of such recital will not be supplied by service at the same time of a certified copy of the order of removal, with order of notice appended.

Removal of the pauper before the expiration of the time limited by the order is nothing of which the town to which the removal is made can take advantage by way of motion to quash the order.

A motion to quash an order of removal reaches only such defects as are apparent on the face of the papers, and does not admit of an issue of fact thereon.

In case proper for service of a copy of the order of removal, with order of notice appended, the return of the officer was, " by virtue of this precept I made service on the within named town . . . by delivering . . . a true and attested copy of the within notice, with my return hereon and thereon endorsed." *Held,* that as neither the copy of the order of removal, nor the order of notice was a complete instrument in itself—a precept or notice—the return showed a service of both the copy and the appended order ; and that the return was conclusive between the parties.

The complaint of the overseer of the poor was against L. The justices considered that L. had come to reside, &c., and that he ought to be removed, and ordered him, his wife C., his daughter J., and his son C., to remove, and that, if they failed to comply, he, his wife C., his daughter J., and his son C. " be removed and transported with his family and effects," &c. *Held,* that as, if the names of the wife and children were stricken from the order, the order would be good as an adjudi-

cation against L., and, as an adjudication against him, would take with him his wife and unemancipated children, and as, under the maxim *omnia rite acta*, it was to be presumed that the children were unemancipated, the order should not be quashed on motion.

THESE were appeals from orders for the removal of certain alleged paupers from the town of Landgrove to the town of Plymouth. The causes were heard together at the December Term, 1878.

The papers constituting the first cause, which concerned the removal of Jonathan Nichols, his family and effects, consisted of a copy of the justices' record of the order of removal in common form, and copies of what purported to be the warrant of removal, an order of notice, and the officer's returns thereon; and they were presented in the order stated. It appeared from the copy of record that the court of examination was held on June 22, and that the pauper was ordered to remove on or before July 24. The warrant of removal, which bore the same date, was, so far as material, as follows:

STATE OF VERMONT, } To either of the constables of Landgrove, Bennington County, ss. } . . . Greeting:

Whereas, at a court of examination, holden at Landgrove, . . . it was ordered and directed that Jonathan Nichols of Plymouth, a stranger, who has come to reside in said Landgrove, and is likely to become chargeable to said Landgrove, and has not gained a legal settlement in said Landgrove, and his last legal settlement in said Plymouth, as appears to us of record.

Therefore . . . you are hereby commanded . . .

It appeared from the return on the warrant that the officer made the removal on July 1; and, from the return on the order of notice, that service was made thereof on the same day. The identity and meaning of the copies was rendered somewhat uncertain by the insertion between the copy of the warrant and the order of notice of a certificate, as follows:

LANDGROVE, June 22, 1878. We hereby certify that the foregoing is a true copy of the original complaint and warrant of the overseer of Landgrove against Jonathan Nichols, and the order of removal and all proceedings had in the premises.

JOHN R. HAYNES, } Justices of the Peace.
W. W. WILEY. }

And by the insertion between the copies of the returns of a certificate as follows :

I hereby certify the above and within to be a true and attested copy of the original warrant with my return hereon and thereon endorsed.

Attest,        J. H. ABBOTT, First Constable.

The several copies were presented in the order above indicated with nothing other than as above to show whether the originals constituted one paper or several.

From the certified copy of the record of the order of removal in the other cause it appeared that the plaintiff's overseer of the poor complained against one Leonard Nichols; that the adjudication of the justices on that complaint, which was made on June 25, 1878, was that said Nichols had come to reside, had not gained a legal settlement, but was likely to become chargeable to the town of Landgrove, when his legal settlement was in fact in, and he ought to be removed to, the town of Plymouth; and that the court ordered him, his wife Cornelia, his daughter Josephine, and his son Charles to remove to Plymouth on or before July 24, and on their failure to comply with that order "that the said Leonard Nichols, Cornelia Nichols, his wife, Josephine Nichols, his daughter, and Charles Nichols his son, together with their effects, be removed and transported with his family and effects." The order of notice was for notification "that Leonard Nichols, with his family, to wit, Cornelia Nichols, his wife, Josephine Nichols, his daughter, and Charles Nichols, his son, and effects, . . . was ordered to remove", &c. The return of the officer on the order of notice, or whatever was served, was, so far as material, as follows :

STATE OF VERMONT, ⎰  At Plymouth . . . by virtue of this pre-
 Windsor County, ss. ⎱ cept . . . I made service on the within named town . . . by delivering . . . a true copy of the within notice, with my return hereon and thereon endorsed.

The application for appeal was for an appeal from "the order and warrant of removal", &c., and certified that a copy thereof and of all other papers served, with the officer's return of service thereon, was thereto attached; and the officer who made service of papers on appeal certified in his return thereon that he served therewith "a copy of the order and warrant of removal . . .

64

and notice and the officer's returns attached thereto " on the plaintiff's overseer of the poor.

In the first of these causes the defendant moved that the order of removal be quashed, for that it did not appear that the warrant of removal did not set out the record of the order, and for that the pauper was removed before the expiration of the time fixed by the order. The plaintiff replied to the motion that the warrant was correct, and that the pauper was removed at his own request. In the second cause the defendant moved that the order be quashed, for that it did not appear that Charles and Josephine had ever come to reside in, or were ever chargeable to, Landgrove, or were ever settled in Plymouth, or were the family of said Leonard ; and for that it did not appear that any order of removal was ever properly made or proper copies thereof served in the cause. The plaintiff replied that said Charles and Josephine were minor children of said Leonard and of his family at the time the order was made, and that it appeared that an order was properly made and proper copy thereof served. The plaintiff also moved for leave to the officer to amend his return. The court, DUNTON, J., presiding, refused, *pro forma*, to grant leave to amend, and adjudged, *pro forma*, that the order in each cause be quashed ; to which the plaintiff excepted.

*Miner & Fenn*, for the plaintiff.

The warrant of removal in the first cause was proper. The statute merely provides that " the justices may issue a warrant," &c., without providing what the warrant shall contain. The form prescribed was followed. The justices made a copy of the order of removal, and then, on the same paper (we say it was all one paper) copied the form for the warrant as laid down in the statute. They then appended the order of notice ; and all was served. All that the statute requires was there included.

Removal before the time fixed was well enough. *Plymouth* v. *Mendon*, 23 Vt. 451.

The order of removal in the other cause was correct. The cases are not in exact harmony, but none of them are decisive of this case. *Derby* v. *Barre*, 38 Vt. 276, is hardly to be reconciled

with the expressions of the judges in *Newbury* v. *Brunswick*, 2 Vt. 151 ; *Bristol* v. *Braintree*, 10 Vt. 203 ; *Burlington* v. *Essex*, 19 Vt. 91 ; *Landgrove* v. *Pawlet*, 20 Vt. 309 ; *Windham* v. *Chester*, 45 Vt. 459 ; and *Danville* v. *Peacham*, 41 Vt. 333. This case is distinguishable from *Derby* v. *Barre* in that here the order of removal and the order of notice include the pauper's *family*.

The officer's return was correct. It showed proper service. The certified copy of the order of removal, with order of notice appended, was a precept or process, and was so denominated in the return. PECK, J., in *East Haven* v. *Derby*, 38 Vt. 253.

*Gardner & Harmon*, for the defendant.

The warrant of removal in the first cause was fatally defective. It should have set out the record of the order. 'Gen. Sts. c. 127, s. 39 ; *St. Johnsbury* v. *Goodenough*, 44 Vt. 662 ; *Wilmington* v. *Jamaica*, 42 Vt. 694 ; *Starksboro* v. *Huntington*, 50 Vt. 599. The proceedings must stand on the sufficiency of the copy of the warrant. Order of notice is unnecessary and of no force, when the pauper is removed within thirty days. Gen. Sts. c. 20, ss. 5–11 ; Sts. 1864, No. 18. HEBARD, J., in *Marshfield* v. *Calais*, 16 Vt. 604.

As to removal before the time limited, see *Barnet* v. *Concord*, 4 Vt. 564, which has not been overruled. The fact of consent is not available upon this question. The papers left with the defendant show no consent, and they cannot be varied.

The order of removal in the second cause is also fatally defective in that it ordered the removal of the son and daughter without alleging that they were minors. *Derby* v. *Barre*, 38 Vt. 276. And see *Burlington* v. *Essex*, 19 Vt. 91.

The officer's return in this case does not show a service of the proper papers. Gen. Sts. c. 33, ss. 21, 27 ; Sts. 1864, No. 18 ; *East Haven* v. *Derby*, 38 Vt. 253. The return is conclusive Sts. 1864, No. 18 ; *White River Bank* v. *Downer*, 29 Vt. 332 ; *Witherell* v. *Goss*, 26 Vt. 748 ; *Starksboro* v. *Huntington*, *supra*. The motion for leave to amend the return was properly overruled.

Landgrove *v.* Plymouth.

The opinion of the court was delivered by ·

Ross, J. These are two pauper cases between these towns, which for convenience were heard together, although they involved different questions—one in regard to the removal of Jonathan Nichols, and the other in regard to the removal of Leonard Nichols. For convenience they are disposed of together.

Since the very recent decision in the case of *Starksboro* v. *Huntington*, 50 Vt. 599, it may be considered as settled that the copies of the order of removal left with the overseer of the town to which the removal is ordered, must state every fact necessary to give the justices jurisdiction, or the order on motion will be quashed. In the case of Jonathan Nichols the pauper was removed within thirty days from making the order of removal. By section 5, c. 20, Gen. Sts., the officer executing the warrant of removal was to leave a true and attested copy thereof, with his doings thereon, with the overseer of the poor of the town to which the removal was made. Where the removal of the pauper is made on the warrant, within thirty days from making the order, the service of the order of notice appended to the order of removal, duly certified by the justices making it, is not required to be made. No. 18, Sts. 1864. The warrant, in such a case, is, if duly served, the instrument which binds the town to which the removal is made, and on its legal sufficiency that town has a right to rely. The form of the warrant is prescribed by statute (chapter 127, s. 39, Gen. Sts), and requires that the record of the judgment of the justices making the order be inserted therein. If the statute is complied with in this respect, the copy of the warrant left with the overseer of the town to which the removal is made, will furnish such town full notice of the adjudication which has been made against it. The proceedings prior to such service are *ex parte*, and are not binding upon such town, unless had and made in substantial compliance with the statute. Hence, the record of the judgment of the justices required to be inserted in the warrant should set forth such facts and adjudications as show that the proceedings have been legal and valid from their inception, and that the justices making the order had jurisdiction in the premises. The warrant served upon the defendant town was fatally defect-

ive in not setting forth the record of the judgment of the justices making the order. It does not show that it was made on the complaint of the overseer of the poor of the town procuring the order, nor that the justices made the proper adjudications in regard to the pauper and his residence and settlement. Without such complaint the justices would have no jurisdiction in the premises, and without the proper adjudications the proceedings before the justices would fail to bind the defendant town. The warrant served on the defendant for the removal of Jonathan Nichols was therefore fatally defective, and the County Court properly quashed the proceedings. This defect was not helped out by the service at the same time of a certified copy of the order of removal with the order of notice appended, as these are required to be served only in case the pauper is not removed within thirty days from the making of the order. The papers as made out by the justices, and as served by the officer, are very much mixed, and it is somewhat difficult to ascertain just what they were intended for or meant. There seems to have been an attempt to join, in not a very orderly or methodical manner, service on the defendant town of the warrant within the thirty days, and of a certified copy of the order of removal with the order of notice appended. But as the statute in case of the actual removal of the pauper only authorized the service of the warrant of removal on the defendant town, we think that town had the right to look to the sufficiency of the warrant alone, and to rely upon any defect found in the proceedings and service as thus made. We do not think that the defendant town could take advantage of the fact that the pauper was actually removed by the officer before the date named in the order, by which time he was ordered to remove voluntarily. What might be the rights of the pauper if compelled by the officer to remove before the day named in the order, it is not necessary to determine. They are not brought under consideration in this case. If by a proper adjudication it had been determined that it was the legal duty of the defendant to support him, at the time the removal was made, the defendant has no legal cause of complaint that the order was prematurely executed, and if so, it is difficult to see how that could operate upon the binding effect of the adjudication of

the justices making the order, or of the notice thereof which the defendant received by the service of the warrant.

Hence, in the case of Jonathan Nichols the judgment of the County Court quashing the order of removal is affirmed.

In the case of Leonard Nichols, the plaintiff has attempted to avoid the effects of the defendant's motion to quash the order by replying thereto and setting up facts which do not appear on the face of the papers. Motions to quash reach only defects apparent on the face of the papers, and are not adapted to nor do they allow of the joining and trial of any issuable fact thereon. Such has been the uniform holding of this court. *Waterford* v. *Brookfield*, 2 Vt. 200 ; *Culver* v. *Balch*, 23 Vt. 618; *Barrows* v. *McGowan*, 39 Vt. 238. Hence, upon the face of the papers, should the proceedings be quashed ?

The defendant insists that the officer's return does not show that he served a duly certified copy of the order of removal, with the order of notice appended, on its overseer of the poor, but only a copy of the notice. From the appeal which was made, on the copy served by the officer, it is apparent that the officer in fact delivered the overseer of the poor of the defendant a copy of the certified copy of the order of removal, as well as of the order of notice appended thereto. In his return the officer states, " by virtue of this precept, . . . I made service . . . by delivering . . . a true copy of the within notice, with my return hereon and thereon endorsed." It is insisted that the words " precept " and " notice " can refer to only that part of the paper served in which the officer is commanded to notify the overseer of the poor of the defendant of the order of removal. The order of notice is in the form prescribed by No. 18, Sts. 1864. The act requires the justices making the order of removal to make and certify a copy of the order of removal, and append thereto a notice in the form prescribed. By the form the officer is commanded to notify the overseer of the poor of the town to which the pauper is ordered to remove, that the pauper was ordered to remove to such town by a day named by the subscribing authority, " as by the above copy of record appears." Thus we have the statute requiring the order of notice to be appended to a duly cer-

tified copy of the record of the order of removal, and the order of notice referring to such certified copy of the record of the order of removal, as part of the document to be served. The order of notice, by itself, is not a complete instrument, and if served alone would give the party on whom served no notice of the essential facts of which the statute requires notice to be given. The same is true of the certified copy of the record of the order of removal. It is only when taken together that they form a complete instrument, a precept, a notice. Hence, we think, if a reasonable and proper construction be given to the language of the officer's return, it shows that the whole instrument, precept, or notice, though composed of two parts, was served on the overseer of the poor of the defendant. In *East Haven* v. *Derby*, 38 Vt. 253, PECK, J., in delivering the opinion of the court, speaks of the certified copy of the record of the order of removal, with the order of notice appended, as " the whole document," to be served as a writ of summons by delivering a copy made and certified by the officer. Treating the officer's return as conclusive between the parties to the proceeding, it shows a sufficient service on the defendant, and the order of removal should not be quashed because defectively served.

From the certified copy of the record of the order of removal, it appears that the complaint of the plaintiff's overseer of the poor was against Leonard Nichols; that the adjudication of the justices thereon was, that he had come to reside, had not gained a legal settlement in, and was likely to become chargeable to, the .plaintiff, when in fact his legal settlement was in, and he ought to be removed, to the defendant; and that the court ordered him, his wife Cornelia, his daughter Josephine, and his son Charles to remove to the defendant by a day named, and on their failure to comply with said order, " that the said Leonard Nichols," Cornelia his wife, Josephine his daughter, and Charles his son, " together with their effects, be removed and transported with his family and effects." The order of notice states that Leonard Nichols with his family, to wit, Cornelia Nichols his wife, Josephine Nichols his daughter, and Charles Nichols his son, and effects were ordered to remove. The defendant contends that the

order should be quashed, because it includes the wife Cornelia, the daughter Josephine, and the son Charles, and if not quashed in whole it should be quashed as to these three. The complaint only brought Leonard Nichols within the jurisdiction of the justices making the order. It was only of his residence, settlement, and likelihood to become chargeable, that they had the right and power to inquire. Starting with their jurisdiction thus limited, the statute is helpful in determining the effect of their inquiry and adjudication. Section 4, chap. 20, Gen. Sts. after providing for the making of the complaint by the overseer of the poor, the issuing of the warrant to bring the pauper before the justices for examination, closes with this language : " If upon such examination the justices shall find such stranger has or is likely to become chargeable to such town, they shall order such stranger, by a certain day, by them to be fixed, to remove to his place of settlement, and if he shall not comply with such order, said justices may, by warrant directed to and to be executed by any constable of such town, or any other person therein designated, cause such stranger with his family and effects to be removed to the place of his legal settlement." From this language it is apparent, that, while the complaint and adjudication was only in regard to the residence, settlement, and chargeableness of Leonard Nichols, it, unappealed from, determined the residence, settlement, and chargeableness of his family, and they could be removed with him. This would include only such members of his family as he would be legally bound to support. To this effect was the decision in *Newbury* v. *Brunswick*, 2 Vt. 151. The complaint was against a man and his family. That part of the complaint which related to his family was quashed as surplusage, although the wife of the party complained against was the one needing assistance. The wife and minor children were actually removed with the husband, and held to have been legally and properly so removed. *Bristol* v. *Braintree*, 10 Vt. 203, is to the same effect. The complaint and adjudication was in regard to William Amidon. He was ordered to remove by a day named, and on his neglect to comply with the order, he was ordered to be removed with his family and effects. The defendant moved to quash, because the names of his family were not in-

serted. The order was held valid. WILLIAMS, C. J., saying: "If bad, it should be quashed only as to the family." In *Burlington* v. *Essex*, 19 Vt. 91, the order stated that the justices considered "that Henry H. Messenger, with his wife, Susannah H. Messenger, and his four children" had become chargeable to the plaintiff, and that his legal settlement was in Essex, and that of right he ought to be removed with his said wife and family to Essex; and it was ordered "that the said Henry H. Messenger do remove with his said wife, Susannah H. Messenger, and their four children and effects," to Essex by a day named. There was a motion to quash the order as to the four children, because they were not named in the order or warrant, and because it was not alleged that they were minor children, and because they were removed. The court held the order good, "since the family is described as consisting of the pauper's wife and his four children," and that the court would intend that his children living with him as a part of his family, were dependent upon him as parent, and subject to his parental control, rather than that they were adult children, and emancipated. In *Landgrove* v. *Pawlet*, 20 Vt. 309, the order directed that one Eseck Comstock, a pauper, remove "with his family and effects" from Landgrove to Pawlet. The defendant moved to quash the order as to the family, alleging that the pauper had a family consisting of a wife, and five minor children, who were removed with him. The County Court quashed the order as to the wife and children, but the Supreme Court reversed the decision of the County Court, and held the order good. From the language of the statute and these authorities, it is apparent that in the case at bar, the copy of the order of removal shows a legal and valid adjudication against Leonard Nichols, and that if the names of his wife, son, and daughter were stricken out of the order, the order would be in strict compliance with the statute; and that such an adjudication, in legal effect ordered him, if he removed voluntarily, to take his family, consisting of his wife and minor children who were unemancipated, with him, and also authorized the officer executing the warrant to remove such family with him, if he did not comply with the order voluntarily. The wife is presumed to be a part of the pauper's family. Therefore

naming her in the order adds nothing to its legal effect, and the order ought not to be quashed as to her. Nor do we think that naming the son and daughter in the order, as part of the persons to be removed with him, adds anything to the legal effect of the order. A son and a daughter are each persons, if unemancipated and minors, who would fall unnamed within the legal scope and effect of the order. It does not therefore appear that any one is included in the order, whose settlement and removal would not be legally included in the adjudication and order against Leonard Nichols.

We think that the maxim, " *omnia rite acta præsumuntur* ", applies to judicial proceedings in pauper cases, as well as in other cases, and when the persons named to be removed with the pauper whose settlement is under adjudication are of a class that would be involved in and take the settlement adjudicated to him, the court is not to presume, because the words son and daughter are used rather than child, or children, that the persons named have therefore attained such an age that they are no longer a constituent part of the pauper's family. No presumption was made in the cases heretofore cited, against the regularity of the proceedings. The case of *Derby* v. *Barre*, 38 Vt. 276, is relied upon by the defendant as establishing a contrary doctrine, and that the order should be quashed *in toto*, because the son and daughter are named in the order. In that case the complaint stated that " Nancy Webb and her family, to wit, Sarah A. Webb, have come to reside in the town of Derby." The order, among other things, stated " that the said Nancy Webb and Sarah A. Webb have come to reside in," and become chargeable to, the town of Derby, and that their legal settlement was in Barre, and then proceeds : " Wherefore said court do order and direct that the said Nancy Webb and Sarah A. Webb, her daughter, do remove with their effects to said town of Barre." The order was quashed on the ground that the order was for the removal of two persons who, so far as appeared when the order was made, had severally attained the age of majority, and were neither of them the husband or wife of the other. The majority of the court held that it did not appear that the daughter named was a minor, or that she was

of the family of the mother. Judge PECK, who delivered the opinion, was of the opinion, that the court ought to intend the contrary, and hold the order good on the face of it. In *Danville* v. *Peacham*, 41 Vt. 333, the complaint and adjudication was against Wealthy Goodall, former wife of Samuel Shephard, deceased, and Ivory H. Goodall, Jr., child of said Wealthy, and the order was, that the said Wealthy Goodall, wife of Samuel Shephard, and Ivory H. Goodall, Jr., her child, do remove with her family and effects. There was a motion to quash, because the order was double. The order was quashed by the County Court, but sustained by the Supreme Court, PECK, J., giving the opinion. The only distinction made by the court between that case and the case of *Derby* v. *Barre*, *supra*, was the use of *child* in the latter in place of *daughter* in the former in describing the person; and that the order used the words " her family and effects ", *her* referring by implication to the mother. The distinction is not the most obvious to the common mind. The latter decision discloses a tendency of the court to return to the spirit of the decisions which preceded the case of *Derby* v. *Barre*, rather than to follow the apparent tendency of that decision. Where the order is clearly double, in that it adjudicates the settlement of two persons whose legal settlement are independent of each other, and the settlement of one is not included in and dependent on that of the other, the order ought to be quashed. The town to which the removal is ordered ought not to be compelled to try two distinct issues under one order. But where the legal settlement of but one person is called up for investigation and adjudication, and others are ordered to remove and be removed with the alleged pauper, and those others are all of those classes which may have such relations to the pauper that the law will not allow them to be separated from the pauper in the removal, and there is nothing apparent upon the record to show that those others have by age or emancipation become freed from those relations, we think the law presumes that such relations exist, and not the contrary, and the order should be upheld. Certainly, if there be no presumption either way, it cannot be said that error is apparent upon the face

of the papers.　Tested by these principles, and on the general scope and spirit of the adjudged cases, the order of removal in this case is valid and legal, and ought not to be quashed.

The judgment of the County Court in the case of Leonard Nichols is reversed, the motion to quash overruled, and the cause remanded.