STATE OF VERMONT *v.* HIRAM HAYNES.

*Motion to Dismiss. Pleading. Jurisdiction. Intoxicating Liquors.*
*Evidence. Judgment.*

A motion to dismiss an appealed criminal prosecution on the ground that the justice of the peace from whose judgment the appeal was taken, acted as attorney for the state upon the trial before himself, was held to have been properly overruled; *first,* because the fact objected to did not appear on the record; and *secondly,* because the motion was not filed till the respondent had pleaded not guilty, and proceeded to trial in the county court.

If a respondent in a prosecution for the unlawful sale of intoxicating liquor, plead guilty to a certain number of offences, without specifying in his plea the times at which such offences were committed, the record becomes conclusive, under the act of 1855, (Acts of 1855, No. 3, p. 8; Gen. Stat chap. 94, secs. 37, 38,) that such offences were committed on the day stated in the complaint; and in another prosecution for offences committed prior to the day alleged in the complaint first tried, the respondent can not prove by parol that any of such offences are the same ones to which he pleaded guilty in the former prosecution.

PROSECUTION for the unlawful selling, furnishing and giving away of intoxicating liquor, originally brought before a justice of the peace, from whose judgment the respondent appealed to the county court.

The facts in the case are sufficiently stated in the opinion of the court.

*Chauncey K. Williams,* for the respondent.

*E. Edgerton,* for the prosecution.

ALDIS, J.   I.   After the trial in the county court had commenced, and while it was in progress, the respondent filed a motion to dismiss, alleging that the justice of the peace, who tried the case, and from whose judgment this appeal was taken, acted as attorney and counsel for the state upon the trial before himself.   The court refused to entertain the motion.

1.   The motion was not founded upon any fact or matter of record apparent upon the face of the proceedings ; but stated an extrinsic fact, which could only be proved by parol evidence.

As no plea can be made, no issue taken upon a motion to dismiss, it is obvious that such a motion was an inappropriate mode of bringing the fact before the court. A motion to dismiss should be founded upon facts appearing of record, or admitted and shown by the plaintiff's own proofs.

2. The motion was not filed till the respondent had pleaded not guilty, and proceeded to trial upon that issue. By thus pleading and entering upon the trial upon its merits, he had waived all mere dilatory pleas. The rules of pleading, and the orderly dispatch of business, alike require that pleas to the jurisdiction, especially when they involve issues of fact that may be disputed, should be pleaded before coming to a trial upon the real cause of action. It is true that where a court discovers at any time that it has no jurisdiction of the subject matter, or of the parties, it will on motion dismiss the suit. But here the court apparently had jurisdiction, both of the subject matter and of the party. The misconduct of the justice (if it existed) in acting as counsel for the prosecution upon the trial, would not show that he had not originally jurisdiction of the case. It was not the duty of the court, when no such fact appeared, to stop the progress of the trial, and make up a collateral issue, and have an investigation, to ascertain whether such misconduct existed on the part of the magistrate.

The motion was properly denied.

II. This prosecution was by complaint of a grand juror, exhibited to the justice of the peace on the 19th December, 1861. Two witnesses testified to offences committed prior to that date—offences against the law regulating the sale of liquors. At the September Term, 1862, the respondent was indicted for similar offences,—the indictment alleging the offences to have been committed on the 12th September, 1862. Upon this indictment he pleaded guilty to nine offences, but did not specify any day or days on which the offences were committed. Upon this trial he offered to show that the offences which the two witnesses here testified to were the same to which he had thus pleaded guilty.

The county court refused to allow him to prove these facts, to which the respondent excepted.

The question arises, was the respondent barred by the record upon his pleas of guilty, from showing these facts ?

The act of 1855, No. 3, (Acts of 1855, p. 8,) enacts in regard to offences for selling liquor in violation of law, that when a party shall plead guilty to the offences charged in the indictment, " such offences shall be taken, held and considered to have been committed on the day specifically set forth in the indictment as the time when such offences were committed ; unless the respondent, at the time of pleading guilty, shall specify some other day or days on which such offences were committed, an entry of which shall be made upon the indictment, and become a part of the record. The judgment rendered on the plea of guilty, as aforesaid, shall not be a bar to any subsequent prosecution for any other offences than the specific offences specified in the indictment, or by the respondent. If on any subsequent proceedings it shall be made to appear that such person has been guilty at any other time or times than is specified in such prior proceedings, as aforesaid, such person may be proceeded against therefor in the same manner, and to the same extent, as though such other offences had been committed subsequent to such prior judgment."

By the practice before this statute was passed it was held—that a conviction, or a plea of guilty, upon an indictment for selling liquor, was a bar to any subsequent prosecution for any offence committed prior to the finding of the indictment. As this is a class of offences in which the violations of law were very numerous, and of almost continual occurrence, liquor dealers were happy to have a conviction for a single offence, or even for a small number of offences, or a plea of guilty for the same, entered against them. Thereby the fine, usually a small one, when compared to the real number of the offences committed, would protect them from all danger for past offences ; and thus, the old score being wiped out, they were the more ready to run their risks for future violations of the law. Hence this act arose, its object being to specify by the indictment, or on the record, the offences for which the party was tried or pleaded guilty, and have the plea or judgment protect only such identical offences.

To secure this end, as the indictment does not specify by time, place, person, or otherwise, any particular act, but only names the offence and the day on which it is alleged to have been committed, (a vague and general mode of averment, used only in this class of cases,) and leaves it open for the government to prove any number of offences, and on any day or days within the statute of limitations,) it became necessary that in some way the specific offence should appear of record. This statute provides that the respondent, in pleading guilty, may specify on what day or days he committed the offence, and that shall be entered of record. He is supposed to know when he has been guilty, and to what offences he means to so plead. The spirit of the statute is that he shall be able fully to protect himself against any second trial and punishment for offences for which he pleads guilty, but that his plea shall not protect as to any offences except those very ones which he thereby confesses. If he does not specify the offences so that they can appear of record, then the law specifies them for him, by assuming that he pleads guilty for offences committed on the day named in the indictment.

Thus, by specification of the respondent, or by construction of law, the offences are definitely ascertained, so far as fixing the day on which they were committed can accomplish that result ; and the judgment is not a bar to the prosecution of any offences except those so specified.

This act, by requiring the offences to be specified on the record, intended, as we think, to exclude all other evidence, and to make the record the only proof, except as to offences committed on the day named in the plea or indictment. Such is the ordinary legal operation of records. There is nothing in the language of the statute to indicate an intent to make this an exception, and give to the record only the force of *prima facie* proof. On the contrary, its clear and specific provisions seem to be framed with the intent to make the record conclusive on the point. If the respondent does specify his offences, he could not be permitted to prove afterwards that he intended to plead to different offences from those he has set forth on the record. He could not be allowed to say in his plea, " I am guilty of an offence committed

on the 12th September, 1862," and afterwards claim, on another trial, that he meant an offence committed on the 19th December, 1861.

If he does not specify, no one can tell what particular acts he means to acknowledge; and if the record is held only as *prima facie* proof, and open to be rebutted, how can his intent be shown, or what shall be the rule by which to determine what acts the plea shall apply to? If we say those offences which the government intended to establish by proof, the application of such a rule would be difficult. The government often does not know what it can prove in such cases. It is not bound by precise averments in the indictment, as in ordinary criminal cases, because from the nature of these trials, proof of particular acts is uncertain and difficult to be obtained, and hence the inquiries of witnesses are often and necessarily mere experiments, to see what can be proved.

Again, the government may expect to prove many—say twenty offences. The respondent has pleaded guilty to five. Shall these five apply to any of the twenty that may afterwards be brought up on a future trial? If not, to which of the twenty?

Again, how shall the intent of the government be shown? By the recollection of the state's attorney? By what witnesses, who were summoned, or who expected to attend, will swear that they would have testified to if they had been examined? Nothing could be more indefinite—nothing more unsafe than such evidence, to give force and direction to a record. Records should speak for themselves, as to what they conclude, and what they do not.

It seems to us that the object of the act, its language, the mischief to be remedied, and the inadequacy of the remedy to prevent the mischief, if we hold the record open to be applied by parol evidence to any offences for which the respondent may afterwards be tried, all clearly indicate that it was the intent of the legislature to make the record conclusive; to express by legal construction the intent of the offender, if he would not express it for himself. If he is silent when he might speak, we

may well suppose it is because he is willing to have the law speak for him.

The phrases "subsequent prosecution," and "subsequent proceedings," when used in this act, apply rather to the time of trial, than to the time of commencing the prosecution. The whole intent of the act, and the language of the third section, require such a construction of these phrases. If we hold otherwise, we have this singular result, that the respondent, by pleading guilty to the last prosecution, may defeat all prior prosecutions against him, and yet remain liable for the same offences, if a subsequent prosecution was commenced against him.

The judgment of the county court is affirmed.