## STATE *v.* GEORGE COX.

*Disqualification of Grand Juror. Gen. Sts. c.* 37, *s.* 5. *Sts.*
1878, *No.* 35. *Nuisance. Misdemeanor.*
*Sts.* 1876, *No.* 33.

The statute forbidding the name of a person once drawn as a juror to be again put into the jury box within two years, does not so far disqualify a person whose name is drawn within that time that an indictment found by a grand jury of which a person so drawn is a member will be thereby rendered invalid.

The keeping of a nuisance, within the meaning of No. 33, Sts. 1876, by keeping a place of public resort for the unlawful sale, &c., of intoxicating liquor is a misdemeanor; and whoever helps in the commission of the offense is a principal.

INDICTMENT under No. 33, Sts. 1876, at the September Term, 1879, for keeping a place of public resort for the unlawful sale, &c., of intoxicating liquor, to the common nuisance, &c. The respondent pleaded in abatement that one of the grand jury by whom the indictment was found was not legally qualified to act as such, in that he had been drawn to act in the same capacity within two years theretofore. To that plea the State demurred. The court, DUNTON, J., presiding, sustained the demurrer and held the plea insufficient; to which the respondent excepted.

The respondent then pleaded not guilty, and trial was had by jury. On trial it appeared that the place described in the indictment was a saloon and a place of public resort, and that lager beer and other intoxicating liquor had been sold therein ; but the respondent testified that he was not, and never had been, the keeper of the saloon, and that he never had more to do with keeping it than to take a lease of it in his own name from one Morse and sublet it to one Naylor, his step-son, and occasionally to attend in it for Naylor, when Naylor was at his meals or otherwise absent, or " in the evening, when there was a good deal of trade."

The court charged that the evidence on the part of the State tended to show that the respondent took the lease and was in the saloon from time to time with Naylor selling liquor, and that " if the evidence stood right there the respondent would be presumed to be the keeper," but that the respondent's evidence tended to

show that he sublet to Naylor and was simply Naylor's clerk or servant; that if the respondent was the proprietor or one of the proprietors, and the lease from him to Naylor a mere cover, and if the respondent sold liquor there, then the respondent would be guilty." To that part of the charge the respondent excepted.

The court further charged that if the jury failed to find that the respondent was keeper or proprietor, they should inquire whether he knowingly sublet the premises for the purposes of the sale of intoxicating liquor contrary to law, and that if they found that he did, or that he had reason to know that Naylor was to put them to such use, then they should find the respondent guilty. To that part of the charge the respondent excepted.

The court also charged that if the respondent took the lease of Morse and sublet to Naylor as he testified, and thereafter aided Naylor in keeping the saloon as he testified, then they should find him guilty. To that part of the charge also the respondent excepted.

Verdict, guilty, and judgment thereon.

*J. B. Phelps*, for the respondent.

The grand juror was disqualified. Sts. 1878, No. 35. The presence of one disqualified person on the grand jury vitiates the indictment. *United States* v. *Hammond*, 2 Woods, 197 ; *Barney* v. *State*, 12 Sm. & M. 68 ; *Commonwealth* v. *Parker*, 2 Pick. 549, 563 ; *Commonwealth* v. *Smith*, 9 Mass. 107.

The court erred in charging on the supposition that the jury might find that the respondent was a proprietor. There was no evidence tending so to prove.

That part of the charge in which the court said that if the respondent sublet the premises knowing, &c., he was guilty, was erroneous. The statute forbids keeping, &c., not aiding and abetting. Such statutes must be strictly construed. *State* v. *Page*, 50 Vt. 445 ; *United States* v. *Sheldon*, 2 Wheat. 119, and cases *passim*. There are cases, like *Commonwealth* v. *Harrington*, 3 Pick. 26, which hold it to be a misdemeanor to aid another to commit a common-law crime. But the rule is not uniform, even to that extent. See *Brockway* v. *People*, 2 Hill, 558 ; Lord KENYON

in *King* v. *Higgins*, 2 East, 5, 18. And none of those cases hold it a misdemeanor to aid another in doing a thing that is an offense only by statute.

*G. E. Lawrence*, State's attorney, for the State, contended that the plea in abatement was rightly held insufficient, and cited Gen. Sts. c. 37, s. 5; Sts. 1878, No. 35; *Kelsey* v. *Kendall*, 48 Vt. 24; *Sturgis* v. *Hull*, 48 Vt. 302. He also contended that if the respondent sublet the premises, knowing what they were to be used 'for, he was a principal, and cited *People* v. *Erwin*, 4 Denio, 129, and *Commonwealth* v. *Harrington*, 3 Pick. 26.

The opinion of the court was delivered by

BARRETT, J. I. As to the plea in abatement. The statute as to not putting the names of persons in the jury box for a space of two years from a previous drawing of such persons as jurors, we regard not to be operative to the intent and effect of disqualifying a person drawn within that space, in such a sense as to render of none effect the action of a jury otherwise entirely lawful and valid, of which such person was a member. That statute was designed to serve two purposes; one, as matter of favor to men who might otherwise be compelled to do an undue proportion of that kind of service; the other, as matter of favor to the board of civil authority, and to the proper administration of justice, by rendering it feasible and easy, and without giving personal offense, to give a respite to some men, who so hanker for the doing of that line of public service as to cause them to see to it that their names are kept, year after year, in the jury-box, and themselves in the jury seats. It is to be presumed that the failure of compliance with the statute in this instance was accidental on the part of the town. It is not shown, nor suggested, that the juror in question was not a lawful and proper man, in case he had not been drawn as juror within the two years next preceding his being drawn in this case. We have not time to pursue the subject, by discussion, upon the reasons and the cases that are involved in and related to it. Suffice it to say that several cases have been before the court within a few years past on questions of quite as

serious irregularity as occurred in this case, in which such irregularity has been held not to vitiate the action of the jury. Notable in this respect was the case of Gravelin, for murder, in Windsor County.

II. As to the exceptions to the charge. It is premised that the offense consists in the keeping and maintaining of the place designated by the statute as a nuisance. If such a place exists, it is the nuisance meant by the statute, and whoever keeps and maintains it commits the offense. That offense is a misdemeanor, as distinguished from a felony. Whether a misdemeanor or not, does not depend on whether the act is such at common law, or is made criminal only by statute, nor whether *malum in se*, or *malum prohibitum*. It is of the grade and quality of crimes, which, at common law, are misdemeanors. In such crimes there are no accessories—no aiders or abettors. There are only principals. Whoever helps towards the commission of the offense is principal, whether there be but one or be many. It stands upon the same ground and reason as civil cases of trespass *vi et armis*, or criminal prosecutions for breaches of the peace. Whoever participates is principal, whatever may be the differing relations that different participants may sustain to the subject-matter, to the occasion, to each other, and to the transaction. In the present case the nuisance existed. The fact that Naylor was guilty of keeping and maintaining it would not preclude the fact that Cox was also guilty. If Cox helped in keeping and maintaining the nuisance, he was guilty of the offense, whether he had precedence, or subordination to, or equality with, Naylor, in the actual relation between them, in reference to the nuisance. The words, " keeping and maintaining", in their meaning, are applicable to persons who are co-operating in the process of instituting and administering the establishment declared to be the nuisance, whatever may be the peculiar relation they sustain to it and to each other in rendering such co-operation.

It is in the light of what is thus said, that the charge, in the respects excepted to, is to be considered. The only thing questionable under the first point is the expression, " if the evidence

stood right there, the respondent would be presumed to be the keeper." If that is to be understood as announcing a conclusive presumption of law upon the facts stated, we should regard it erroneous. But it is not to be so understood. Taken in connection with the context, it was designed and understood as expressing what would be presumable, in the sense of seeming likely or probable, as matter of fact. That this is so is evinced by what immediately follows, in stating the counter evidence on the part of the respondent, and leaving it to the jury upon the evidence *pro* and *con*, to find how the fact was as to his participation in the keeping and maintaining of the existing nuisance.

The other points of exception to the charge fall within what has been said as to participants and co-operators being principals. The acts of Cox, which the evidence tended to show, and which the court instructed the jury, if found, would render him guilty, were acts of participating and co-operating in the keeping and maintaining of the nuisance, to the effect of making him guilty of the offense charged. No subtlety of verbal criticism can elude or disguise the plain and legal sense of the language of the statute, as covering, and designed to cover, just such a part as Cox was acting, as the evidence tended to show, in getting up and carrying on the nuisance in question. Naylor may have been the skeleton frame-work, while Cox was the muscle, blood, heart, and vitalizing spirit that gave the skeleton its effective faculty to do the evil work which the law was designed to prevent.

Exceptions overruled ; judgment and sentence affirmed, to take effect from to-day, and to be carried into execution by proper warrant.