## STATE v. LAWRENCE BRAINERD.

### Grand Jurors. R. L. ss. 884, 1616.

1. Twelve of the eighteen grand jurors required to be summoned can find a legal indictment, although the other six do not act.
2. The wife of one of the grand jurors, who found an indictment against the respondent charged with misapplying and diverting the funds of the St. Albans Trust Company, was a depositor in the said company in her own right. Held, that the grand juror was not disqualified.
3. A practice under a statute should have weight in construing it.
4. R. L. ss. 1616, 1617, grand jury, construed.

INDICTMENT charging the respondent with misapplying and diverting the moneys of the St. Albans Trust Company, while he was director and president of the company. Heard on demurrer to the pleas, September Term, 1883, ROYCE, Ch. J. presiding. Demurrer sustained, and indictment held sufficient. The indictment charged that the respondent, contrary to the act incorporating the said trust company, and contrary to the form of the statute, while he was president and director of the said trust company, misapplied and diverted $30,000, of the moneys deposited with the said trust company, from the purposes and objects of the act of incorporation. The facts, upon which the pleas were based, are sufficiently stated in the opinion.

*Edson, Cross & Start* and *Stephen E. Royce*, for the respondent.

The right of the respondent to challenge grand jurors for favor or interest, and the jurors so challenged excluded, is established beyond question. *Commonwealth* v. *Clark*, 2 Bro. (Penn.) 323. One or more jurors on the panel, who were disqualified by statute or at common law, would invalidate the finding, though concurred in by twelve others. 1 Chit. Cr. L. 308; *State* v. *Hawkins*, 10 Eng. (Ark.) 71; *State* v. *Brown*, Ib. 78; *Jackson* v. *State*, 11 Tex. 261; *Stokes* v. *State*, 24 Miss. 621; *Scott* v. *State*, 63 Ala, 59; *Couch* v. *State*, Ib. 163. In this State challenges of grand jurors are unknown in practice; but the respondent has waived no right, and can now, and in the manner that he has by pleas, insist that the bill was not found by the concurrence of twelve legally qualified members of the grand jury. *State* v. *Davis*, 12 R. I. 492; *State* v. *Easter*, 30 Ohio St, 542; *McQuillen* v. *State*, 8 Smed. & M. 587; *People* v. *Beatty*, 14 Cal. 566; *McElroy* v. *State*, 9 Neb, 157; *Hardin* v. *State*, 22 Ind. 347; *U. S.* v. *Hammond*, 2 Woods, 197; *U. S.* v. *Reed*, 2 Blatchf. 435; *Mershon* v. *State*, 51 Ind. 14; *Clare* v. *State*, 30 Md. 163. The same rule and reason apply to grand jurors as to other bodies constituted by law for the administration of public affairs. All must meet and confer, and then the majority,—in the case of grand jurors, two-thirds,—shall decide. *Bank* v. *Mount Tabor*, 52 Vt. 87.

*Alfred A. Hall* and *E. R. Hard*, for the State.

The grand jury was legally drawn, summoned, and charged, the full number being present. So long as twelve of that number remained, who were competent to act, and those twelve concurred in the finding of a bill, it was valid, either at common law or under our statute. 4 Bl. Com. 305; 1 Chit. Cr. L. c. 6, p. 306; *Pybos* v. *State*, 3 Humph. 49; Prof. Jur. s. 46; *Rolfe* v. *Gatewood*, 20 Cal. 146; *People* v. *Roberts*, 6 Cal. 214; Bac. Ab. Indictment (C); R. L. s. 1616; *Commonwealth* v. *Wood*, 2 Cush. 149; *State* v. *Miller*, 3 Ala. 343; 63 Ala. 126; *Mesmer*

v. *Commonwealth*, 26 Gratt. 976 ; *People* v. *Hunter*, 54 Cal. 65 ; *State* v. *Ostrander*, 18 Iowa, 435 ; *Beasley* v. *People*, 89 Ill. 571 ; *State* v. *Davis*, 2 Ired. 157. The grand jurors were not disqualified by reason of interest. *State* v. *Phelps*, 11 Vt. 116 ; *Koch* v. *State*, 32 Ohio, 353 ; *Commonwealth* v. *O'Neil*, 6 Gray, 343 ; *Middletown* v. *Ames*, 7 Vt. 166 ; *State* v. *Batch-* elder, 6 Vt. 479 ; *Commonwealth* v. *Ryan*, 5 Mass. 90 ; *Betts* v. *State*, 66 Ga. 508 ; 1 Bish. Cr. L. s. 856, a. ; *State* v. *Newfane*,. 12 Vt. 422 ; *State* v. *Champeau*, 52 Vt. 317 ; *State* v. *Cox*, 52 Vt. 473.

The opinion of the court was delivered by

VEAZEY, J.    One of the grand jurors was taken sick after the due organization of the panel, and was absent and unable to participate in the proceedings while the cases against the respondent were under consideration and when the indictment in question was found by the grand jury.

1.    Did this invalidate the indictment ?

The answer to this question must depend upon the construc-tion of our statutes and can receive but little aid from the deci- sions elsewhere inasmuch as they were made under statutes dif- fering more or less from ours.

Section 884, R. L. provides for summoning eighteen "judi- cious men " * * * " to serve as grand jurors." There is no provision, as in many of the States, for a maximum and mini mum number to be summoned.

Section 1616, R. L. provides that " when the grand jury *or* any twelve of them find a bill of indictment to be supported by good and sufficient evidence," the foreman shall write thereon " a true bill."

Section 1617 : " No bill of indictment shall be presented by a grand jury unless twelve of the jurors agree to the same." Under these provisions it is claimed that the whole eighteen impanneled and sworn must be present and act, otherwise an indictment is bad. If this is so, then the sickness and thereby necessary absence of one, occurring after the grand jury is

State *v.* Brainerd.

impanneled and sworn, prohibits any further action during such absence, which might be permanent and thereby all further action be impeded. This results because our statutes do not provide for filling such or any vacancy occurring in the board. The statute, s. 897, *does* provide for the case when all the persons summoned in the first instance do not appear at the time stated in the *venire*, but goes no further. It is unlike the statute, s. 896, when more *petit* jurors are required for any reason during the term. At common law a grand jury may consist of any number between twelve and twenty-three ; but only twelve are required to concur to find a true bill. As stated by Blackstone, (4 Com., 302, 306): "As many as appear upon the panel are sworn upon the grand jury, to the number of twelve at least, and not more than twenty-three, that twelve may be a majority." " To find a bill there must at least twelve of the jury agree." Before a person could be convicted of a capital offense, twelve at least on the grand jury must assent to the accusation and twelve more find him guilty on the trial. Judge DILLON, in *State* v. *Ostrander*, 18 Iowa, 435, after referring to the common law rules and citing numerous authorities, says : " The requiring of twenty-three to be summoned, though we have found no reason stated in the books, was probably in order to make sure of obtaining a jury of twelve, possibly to be sure of having a few over, so that if the accused should have a friend or two upon the panel, the course of justice might not be defeated ; *possibly to prevent a dissolution of the jury by the death or sickness or absence of one or more of the jurors,* or it may be for all of these reasons combined." It is plain from this, that it never occurred to him, in the elaborate investigation which he gave the subject, as that opinion shows, that the absence of one or more on account of sickness or death would prevent those remaining from proceeding with their investigations, provided there were twelve left.

Our statute differs from the common law in this, that it directs, and possibly requires, eighteen men to be summoned, impanneled, and sworn, in order to constitute a grand jury ; but we think that

the expression of the statute, when "the grand jury *or any twelve of them* find a bill," etc., was so framed in order to admit of the action of twelve as a minimum up to eighteen as a maximum as the proper and legal action of a grand jury. We think that, in the absence of any statute declaring that the entire eighteen must be present all the time, and at the time of finding an indictment, and of any provision to fill a vacancy created by sickness or death, or other unavoidable cause, after being impanneled and sworn, the statute defining the number, eighteen, which shall constitute the grand jury, was at most but the substitution of a fixed number for the indefinite common law number, required to be impanneled, and was not intended to refer to the number also required to constitute a quorum for action in a given case, but the number required for this purpose is controlled by the other provision above quoted, that "any twelve of them" may find a bill. *See Baldwin's case*, 2 Tyler, 473.

We understand that not only the present judges but their predecessors when presiding in County Courts have permitted the necessary temporary absence of a grand juror, and have never regarded it as vitiating an indictment found during such absence. When the construction of a statute is involved a practice under it thus adopted should have weight. There is no ground for drawing the line anywhere between the twelve and eighteen. The whole number must be present and participate, or twelve is sufficient.

We think the above construction is consistent with the decisions generally in other jurisdictions. The difference in the statutes prohibits such decisions from being controlling either way; but the course of reasoning found in some opinions, applies with more or less force to this case. *See State* v. *Davis*, 2 Ired. 157; *Commonwealth* v. *Wood*, 2 Cush. 149; *State* v. *Miller*, 3 Ala. 343; *People v. Roberts*, 6 Cal. 214; *People* v. *Hunter*, 54 Cal. 65; *Pybos* v. *State*, 3 Hump. (Tenn.) 49; *Hudson* v. *State*, 1 Blackf. 317; *Beasley* v. *People*, 89 Ill. 571; *Mesmer* v. *Commonwealth*, 26 Gratt. (Va.) 976. Proffatt on Trial by Jury, sec. 46, says: "If the necessary minimum number are on the grand jury when an indictment is found, it will be good."

State *v.* Brainerd.

The above views also cover the ground of the claim as to the five who were present, but did not vote on account of being depositors in the bank of which the respondent was president, there being twelve who agreed to the bill.

But it is further claimed that these five were disqualified by favor, being interested on account of being depositors, and that one other who was one of the twelve who agreed to the bill, was also disqualified on account of his wife being a depositor, though in her own right. The ground of this claim is, that if the respondent is guilty of the charges alleged in the indictment, he would be liable to these men for any loss in their deposits. This is plainly too speculative and remote. In *Middletown* v. *Ames*, 7 Vt. 166, it was held that a juror was not disqualified though the fine might go into the treasury of the town of which he was a ratable inhabitant. In *Commonwealth* v. *Ryan*, 5 Mass. 90, that the indictment was good, though the foreman of the grand jury that found the indictment was a taxable inhabitant of the town to which the fine would go. Thompson and Merriam on Juries, cite two cases, one in Pennsylvania and one in Virginia, where it was held that an indictment for embezzling the money of a bank was good, although one of the grand jurors who found the indictment was a stockholder in the bank, and possessed a large amount of its notes, and therefore was greatly interested in procuring the indictment. The authors say : " Such a juror cannot be said to be interested in the event of the prosecution. He can neither gain nor lose by a conviction or acquittal of the accused. He is not interested beyond that common interest which every member of society must feel in the conviction of such persons as offend against the peace, the order and well-being of society." Add. (Pa.) App. 45 ; *Commonwealth* v. *Strother*, 1 Va. Cas. 186. See also Prof. Jur. s. 169, and cases there cited ; also *Waters* v. *Day*, 10 Vt. 487 ; *State* v. *Newfane*, 12 Vt. 422.

We find no error, and the judgment of the County Court sustaining the demurrer to the pleas and adjudging the indictment sufficient, and ordering the respondent to answer over, is affirmed, and the cause is remanded to be proceeded with.