## STATE *v.* THOMAS WARD.

### *Criminal Law.   Pleading.   Grand Jury.*

1.  MOTION TO QUASH.  A motion to quash must be founded upon facts appearing of record, or admitted or shown by the plaintiff's proof. And such motion, supported by affidavits, based on the ground that the grand jurors, who found the indictment, were not legally qualified to act, was properly overruled.

2.  PLEA IN ABATEMENT.  The plea in abatement is defective in lacking certainty and in presenting several issuable facts by the use of the disjunctive " or."

3.  COMMON LAW.  The common law rules relating to pleas in abatement have never been relaxed in this State.

4.  GRAND JURY.  PLEADING.  Irregularities in the method of selecting, returning, or organizing the grand jury, are not waived by one bound up to the County Court to answer such indictment as might be found against him, by failure to challenge an objectionable grand juror at or before the organization of the panel.  Objection to such irregularities may be raised by plea in abatement at or before the time the accused pleads to the indictment.

5.  COUNTY COURT, DISCRETION OF.  GRAND JURY.  TALESMAN.  The County Court in the exercise of reasonable discretion can discharge a grand juror for other that statutory causes and substitute a talesman, who is competent to act; thus, there being a question whether one of the grand jurors was qualified, the court discharged him and substituted a talesmen; *Held,* that there was no error, although it was finally decided that the discharged grand juror was qualified.

6.  ACT OF 1884.  NO. 111.  Under the Act of 1884, No. 111, s. 1, which provides that a person drawn to serve as a grand juror shall be disqualified from again serving " for two years from such drawing," it was *held,* that the disqualification commenced at the time of drawing, and not at the time of serving.

INDICTMENT for arson.   Heard on motion to quash and demurrer to plea in abatement, filed December Term, 1886, at the May Term, 1887, Caledonia County, POWERS, J., presiding. Motion overruled and demurrer sustained.   The cause was passed to the Supreme Court under section 1390, R. L.   The prisoner had not been arraigned at the time the plea and motion were filed.

State *v.* Ward.

The motion to quash alleged that the indictment was returned at the June Term, 1886, by a grand jury not lawfully summoned and not lawfully qualified ; that one person, *viz.* : Reuben Ellis, who served in finding and returning the indictment, was not duly summoned and qualified to act ; that the court without authority or legal right, discharged from the panel of jurors one Henry Hoffman, a grand juror then present in court, who was ready and willing to serve and was legally qualified to act. The court found the facts as stated in the affidavits in support of the motion. By these it appeared that the court discharged said Hoffman and appointed said Ellis as talesman to serve as grand juror ; that said Ellis did serve as grand juror when the indictment was found against respondent ; that said Hoffman served as grand juror at the June Term, 1884, and that he was summoned, etc., at the June Term, 1886, as grand juror and was willing to serve. The plea alleged in part : " Because he says, that one Reuben Ellis then and now a resident of the town of Sutton, in said County of Caledonia, did act and serve, as one of the grand jurors of said County Court, in finding and returning said indictment against him, said Thomas Ward, at the said June Term, 1886, of Caledonia County Court, aforesaid ; that the said indictment against him, said Thomas, was found, and returned by the grand jurors of said county, into the County Court aforesaid, at its June Term, 1886, and was not found or returned into said court at any other term or time, of said County Court ; that at the time when the said Reuben Ellis so acted and served in finding and returning said indictment as aforesaid, into said court as aforesaid, at the term aforesaid, he, said Reuben Ellis, was not duly or legally elected, qualified, empanelled, sworn or charged, as such grand juror, for the term aforesaid, and was not then and there duly or legally qualified to act *or* serve as such grand juror, at the term aforesaid, and in the manner aforesaid.

And the said Thomas Ward further saith : that the said Reuben Ellis did act and serve as such grand juror, of said County Court at its June Term aforesaid, in finding and returning to the court aforesaid at the term aforesaid, the said indictment ; and that at the time when the said Reuben Ellis was summoned to appear and act as such grand juror, at the term

aforesaid, and at the time he did so act and serve as such grand juror in finding and returning said indictment, as aforesaid, at the term aforesaid, to the court aforesaid, said Reuben Ellis had not been duly *or* legally elected to serve as such grand juror, as aforesaid, by any town in said county, at the annual town meeting of the several towns, *or* any town of said county, at their annual March meeting, A. D. 1886; that said Reuben Ellis was at the time he was summoned, acted and served as such grand juror, and for a long time prior thereto, to wit, for ten years, had been a resident of the said town of Sutton; that at the annual town meeting of the said town of Sutton, held in March, 1886, the members of the board of civil authority of said town then present at such meeting did nominate as grand jurors of said town, for the year next following, the following persons, to wit : George E. Powers and Corydon Parker, as such grand jurors, and did not choose any other person or persons as such grand jurors, than the said George E. Powers and Corydon Parker, and that within five days after said annual town meeting, A. D. 1886, the clerk of said town of Sutton, to wit : John E. Willard, did return by mail to the clerk of said County Court aforesaid, to wit : Andrew E. Rankin, a certificate of the election of said Powers and said Parker as such grand jurors for the term of one year next after said annual meeting of said town of Sutton; and said Parker and Powers were at the time they were so chosen by said town of Sutton as aforesaid, at the annual meeting as aforesaid, 1886, and at all times between said meeting aforesaid and July 1, 1886, duly and legally qualified to serve and act as grand jurors for said County Court at the term aforesaid; and said Reuben was not at said annual meeting of said town of Sutton, nor that of any town in said county, at the annual meeting aforesaid, nor *that* of any other meeting, duly or legally nominated, elected or chosen as grand juror for said Caledonia County, nor was the name of said Reuben Ellis returned to clerk of said County Court by the town clerk of the said town of Sutton, nor by the town clerk of any other town in said county of Caledonia, as the legally elected grand juror of said town of Sutton or any other town in said county for the year following the annual town meeting held in March, 1886.

And the said Thomas Ward further saith : that at the annual

town meeting of the legal voters of the town of Wheelock in said county, at its annual town meeting, in March, 1886, the board of civil authority then present did nominate, and the voters of said town did elect as grand jurors for the year next following, Ferdinand Darling and Henry Hoffman; that said Ferdinand Darling and Henry Hoffman were at the time of their nomination and election as aforesaid, and at the time of drawing grand jurors by the sheriff of Caledonia County as hereinafter set forth, in May, A. D. 1886, and at the time when said grand jurors met, on the first day of said June Term, 1886, and at all times between said March meeting, 1886, and the close of said June Term, 1886, duly and legally qualified to act and serve as such grand jurors within and for said county, and were physically able to attend said court as such grand jurors at any and all times during said June Term, 1886. And the said Thomas Ward further saith that the judges of said County Court aforesaid, in accordance with law, and prior to the said June Term, 1886, of said County Court, to wit: on the first day of May, 1886, did direct the clerk of said County Court, to wit: said Andrew E. Rankin, that the grand jurors who by law should hear, try, determine, find and return all criminal matters and indictments to said County Court at its said June Term, 1886, should be summoned and drawn from the several towns in said county as follows, to wit: That there should be drawn from the towns of Barnet, one; Burke, one; Danville, one; Groton, one; Hardwick, one; Kirby, one; Lyndon, one; Newark, one; Peacham, one; Ryegate, one; Sheffield, one; Stannard, one; St. Johnsbury, two; Sutton, one; Walden, one; Waterford, one; Wheelock, one; or in the entire county aforesaid eighteen (18) grand jurors were ordered to be summoned and drawn by the sheriff of the county aforesaid, to attend as grand jurors at the said June Term, 1886, as aforesaid. And the said Thomas Ward saith, that all said eighteen men so to be drawn as aforesaid, were to be such persons as the several towns of said county had elected at their several annual town meetings in year A. D. 1886, and the several town clerks of the said towns had returned to the clerk of said County Court as aforesaid.

\* \* \* \* \* \*

And the said Thomas Ward further saith, that according to the

direction and order of the said judges of County Court, as aforesaid, the sheriff of said county, to wit: Lorenzo Sulloway, Jr., afterwards, to wit: on the 11th day of May, 1886, drew from the box prepared for that purpose at the county clerk's office of said county, at St. Johnsbury, in said county, and from the lists furnished by the several town clerks of the several towns aforesaid."

"And the said Thomas Ward further saith, that notwithstanding all said eighteen grand jurors so drawn, summoned, empanelled; charged and sworn as aforesaid, were duly and legally qualified to act and serve aforesaid as the legal grand jurors for said County Court and term aforesaid, the judges of said County Court, without the consent or knowledge of this respondent, and after all said eighteen persons had so appeared, been charged, empanelled and sworn as aforesaid, without authority of law, without legal disqualification on the part of any of the said eighteen persons, without the request of the person so discharged, as hereinafter set out, for the term aforesaid, and without any legal reason or cause, discharged for the term and sent away from the panel aforesaid, so legally drawn, summoned and appearing as aforesaid, Henry Hoffman as aforesaid, of said town of Wheelock, who had at the annual town meeting of said town of Wheelock been duly nominated by the board of civil authority of said town, and chosen by vote of said town as grand juror for the year next following, etc.

\*     \*     \*     \*     \*     \*

"And this respondent refers to the indictment aforesaid and to the venire for grand jury at the June Term, 1886, and other records of the said county clerk, and makes the same a part of this plea.

"Without this, that the said Reuben Ellis was ever drawn, nominated, chosen, summoned, charged or sworn as grand juror for the term aforesaid and the county aforesaid, in any other manner or way than as above set forth.

"All this the said Thomas Ward will verify; wherefore, he prays judgment of said indictment, and that the same may be quashed."

The other facts are sufficiently stated in the opinion of the court.

State *v.* Ward.

*Bates & May* and *Harry Blodgett*, for the respondent.

The plea was filed by leave of court; hence if not filed in season it is properly before the court. 10 Vt. 280; 12 Wheat. 479. Hoffman was not disqualified from serving. Under the act of 1884, the disqualification ends in two years *from date of* former drawing.

It must appear that the juror was incompetent, before the court can exercise the right claimed. 52 Vt. 366. Under the act of 1878, No. 35, Judge BARRETT decided that a grand juror drawn within two years was not disqualified. *State* v. *Cox*, 52 Vt. 471. See *United States* v. *Reeves*, 3 Woods, 199; 19 Pick. 368. Under the common law all citizens who were " men of credit and good standing," were eligible as jurors. Proffatt Jur. s. 44. Unless the statute has added another disqualification, such persons remain eligible. *Quinn* v. *Halbert*, 52 Vt. 353; *State* v. *Quimby*, 51 Me. 395; 38 Me. 200; 53 Me. 328. The act of 1884 could have no application to persons who had served before its passage,—Nov. 26, 1884. *Steamboat Farmer Co.* v. *McCrow*, 31 Ala. 659; *State* v. *Chaney*, 31 Ala. 342; 30 Penn. St. 156; *R. R. Co.* v. *Cilley*, 44 N. H. 578; 25 Vt. 41. The prisoner was deprived of a right given him by law. " Every indictment must be found by a grand juror legally selected, duly constituted and competent for the purpose." 36 Me. 130; *State* v. *Champeau*, 52 Vt. 313. The discharge of a grand juror without cause will render the action of the grand jury void. *Stokes* v. *State*, 24 Miss. 621; *Portis* v. *State*, 23 Miss. 578; *McQuillen* v. *State*, 8 Sm. & M. 587; *Van Hook* v. *State*, 12 Tex. 252; *People* v. *Geiger*, 49 Cal. 643.

But if Hoffman was incompetent the court had no authority to put Ellis upon the panel. *State* v. *Symonds*, 36 Me. 128; *State* v. *Rockafellow*, 6 N. J. L. 405; *State* v. *Easter*, 30 Ohio St. 542; 27 Am. Rep. 478; *State* v. *Davis*, 12 R. I. 704; 34 Am. Rep. 704; *State* v. *Jacobs*, 6 Tex. 99.

A grand jury " consists of the requisite number of competent individuals, selected, summoned and sworn according to

State v. Ward.

the forms of law." *State* v. *Brown*, 10 Ark. 78 ; 1 Arch. Cr. Pract. p. 535 (marginal), 161 ; *Leathers* v. *State*, 26 Miss. 73 ; Proffatt Jur. s. 44.

The legislature gave to towns the authority to nominate and elect grand jurors, and took away all control of the court. R. L. s. 897 ; VEAZEY, J., in *State* v. *Brainerd*, 56 Vt. 532 ; Act of 1884, No. 111. See section 2 of said Act. The statute in plain words gave power to fill any vacancy as to petit jurors from bystanders. The legislature changed the law as to grand jurors. There is no law in our State by which a prisoner can challenge a grand juror. 1 Whart. Cr. Law. p. 381, s. 472.

The rule seems to be in these states where allowed, that the challenge to be exercised before indictment is found, goes only to the jury, and not to statutory disqualifications. *United States* v. *White*, 5 Cranch C. C. 457 ; *People* v. *Jewett*, 3 Wend. 314 ; *United States* v. *Hammond*, 2 Woods, 197.

In this State, the question can be raised by plea in abatement. *State* v. *Brainerd, supra* ; *State* v. *Champeau, supra* ; *State* v. *Cox, supra* ; *State* v. *Emery*, 59 Vt. 84. See 2 Tyler, 384 (motion in arrest).

In other states both plea and motion are used ; and such is the rule laid down in text writers. 1 Bish. Cr. Pro. s. 443 (1st ed.) ; 53 Ga. 73 ; 21 Am. Rep. 265 ; 15 Me. 104 ; 38 Me. 265 ; 3 Zab. 33 & 49 ; 11 Cush. 422 ; 33 N. H. 216 ; 61 Ala. 201 ; 33 Miss. 356 ; 3 Kan. 263 ; 34 La. An. 669.

If the plea states the objection in plain, unambiguous language, it is sufficient. Strict technical accuracy is not required. *United States* v. *Godding*, 12 Wheat. 460 ; 66 Me. 142 ; 9 Rep. 388 ; 17 Ohio, 222.

Matters *dehors* the record properly come in. *Com.* v. *Leisening* (Penn.), 10 Rep. 379 ; 1 Whart. Cr. Law, s. 472 ; *United States* v. *Gale*, 109 U. S. 65 ; 27 L. C. P. Co. 857.

The plea and proof fail to show that Ellis was a citizen

State v. Ward.

even. A talesman cannot be drawn unless a grand juror fails to appear, and the bystander must have been nominated and elected a grand juror by some town within county, and his name found in the jury box. *Commonwealth* v. *Knapp*, 10 Pick. 477; Haw. P. C. 25. Incompetency of one grand juror vitiates the finding of the whole board; and the objection may be availed of by plea in abatement. 1 Bish. (3d ed.) Cr. Proc. s. 884; *State* v. *Symonds*, 36 Me. 128, is a case where an indictment, found by a grand jury, a part of which was drawn from bystanders,. was quashed even. after conviction. A motion in arrest was sustained in *Commonwealth* v. *Parker*, 2 Pick. 559, on the ground that a grand juror who had been summoned, gave way to another man, the constable assenting. This in effect overrules the case in 9 Mass. 107. The finding of the grand jury has been held void, where the venire had no seal: *State* v. *Fleming*, 66 Me. 142; *State* v. *Lightbody*, 38 Me. 200; *State* v. *Williams*, 1 Rich. L. 188; *United States* v. *Antz*, 16 Fed. Rep. 119.

Where the statute had not been complied with in summoning, etc.: *Findley* v. *State*, 61 Ala. 201; *Scott* v. *State*, 63 Ala. 59; *Berry* v. *State*, 63 Ala. 126; *Couch* v. *State*, 63 Ala. 163; *People* v. *Wintermute*, 1 Dak. T. 63; *People* v. *Southard*, 46 Cal. 141; *Com.* v. *Justices*, 5 Mass. 435; *People* v. *McKay*, 18 John. 212; *State* v. *Cantrell*, 21 Ark. 127; 3 Kan. 263; 4 Blackf. 736; 6 Blackf. 188.

Where a grand juror was an alien: *Cole* v. *State*, 17 Wis. 674; *Reich* v. *State*, 53 Ga. 73; 22 Am. Rep. 265; *State* v. *Davis*, 12 R. I. 492; S. C. 34 Am. Rep. 704; *State* v. *Brown*, 5 Eng. 71; *Com.* v. *Cheney*, 2 Va. Cases, 20.

Where grand juror was not a freeholder: *Com.* v. *St. Clair*, 1 Grat. 556; *State* v. *Duncan*, 7 Yerge. 271; *Barney* v. *State*, 12 Sm. & M. 68; *State* v. *Rockafellow*, 6 N. J. L. 405; 5 Porter, 484 and 130.

Nor a qualified elector: *Doyle* v. *State*, 17 Ohio, 222; *Cole* v. *State*, 17 Wis. 674.

Where negroes were excluded : *Neal* v. *Delaware*, 103 U. S. 370 ; S. C. 26 L. C. P. Co. 567 ; *Bush* v. *Kentucky*, 107 U. S. 110 ; S. C. 27 L. C. P. Co. 354.

The plea was good in substance and form. 17 Ohio, 222 ; 26 Miss. 73 ; 23 Rep. 513.

*Henry C. Ide*, for the State.

1. The motion to quash was properly overruled : First, because it was based upon extrinsic matters not apparent upon the record. "Motions to quash reach only defects apparent on the face of the papers, and are not adapted to nor do they allow of, the joining and trial of any issuable fact thereon." *Landgrove* v. *Plymouth*, 52 Vt. 503.

"The illegal selection of the grand jurors is no cause for quashing an indictment on motion." 1 Whar. Cr. Law. s. 520 ; *State* v. *Hensley*, 7 Black. 324 ; *Bennett* v. *State*, 2 Yerge. 472 ; *State* v. *Tucker*, 20 Iowa, 508 ; *State* v. *Cole*, 19 Wis. 129 ; *State* v. *Fee*, 19 Wis. 562 ; *Wickwire* v. *State*, 19 Conn. 477 ; *State* v. *Foster*, 9 Tex. 65.

Second, because the quashing of an indictment is discretionary, and error does not lie in its refusal. *State* v. *Stewart*, 59 Vt. 273 ; 1 Whar. Cr. Law, s. 519 ; *Commonwealth* v. *Eastman*, 1 Cush. 189 ; *State* v. *Putnam*, 38 Me. 296 ; *State* v. *Hurley*, 54 Me. 562.

2. The demurrer to the plea in abatement was properly sustained : First, the respondent's dilatory pleadings were not filed within the time when such are allowable. Rob. Dig. 532.

It is error for the County Court to sustain dilatory pleadings not seasonably filed. Ross, J., in *Dow* v. *School Dist.* 46 Vt. 111 ; *Pollard* v. *Wilder*, cited in *Montpelier* v. *Andrews*, 16 Vt. 605. Such objection may be raised by demurrer. *Jennison* v. *Hapgood*, 2 Aik. 31. The arraignment of the respondent has nothing to do with the time of filing dilatory pleas. It should not occur until all dilatory matters are disposed of. 1 Whar. Cr. Law, p. 536.

State *v.* Ward.

Second, the plea is insufficient in form. The most strict and rigid rules of exact pleading are applied to pleas in abatement; and the slightest deviation or irregularity has always been fatal. A plea in abatement " must be pleaded with strict exactness." Whar. Cr. Law, s. 537; *State* v. *Emery*, 59 Vt. 84. Such pleas " for mere defects in the constitution of the grand jury * * * are not favored." *State* v. *Duggan*, 3 New Eng. Rep. p. 135. The allegation that Ellis "was not duly *or* legally elected, qualified, impanelled, sworn *or* charged," does not present a traversable issue. No one can say whether the pleader intended to present an issue as to Ellis being " duly " elected, or " legally elected," or as to whether he was " qualified " or " charged." The same use of " or " is again made in the last line of the same paragraph. In other places in the plea there is a like confusing use of " *or*." An allegation is made that Ellis " was at the time he was *so summoned*," etc., when before that there was nothing in the plea to show that he ever had been summoned. There is an allegation that the board of civil authority, " did nominate " certain grand jurors, and " did not *choose* any other person." It is not the duty of the board to " choose ' grand jurors. That is for the town to do. Sec. 2730, Revised Laws. But there is here no allegation of any action by the town.

Nor does it appear that Sutton ever elected or " chose " any grand jurors. Hence Ellis may have been legally appointed under section 2, Act No. 111 of 1884. This objection alone is fatal to the plea.

It is alleged that the sheriff drew out " the names of the eighteen persons before named," when twenty-five persons had been " before named."

Third. Irregularities in selecting and impanelling the grand jury, which do not relate to the *competency* of individual jurors, can in general only be objected to by challenge to the array. Whar. Cr. Law, s. 468; *Commonwealth* v. *Smith*, 9

Mass. 107; *People* v. *Jewett*, 3 Wend. 314; 12 Tex. 252; Proffat Jur. s. 47; *State* v. *Howard*, 10 Iowa, 101; 20 Cal. 146; *James* v. *State*, 45 Miss. 572; Bac. Abr. tit. Juries; *Clawson* v. *United States*, 114 U. S. 477.

While the authorities are not uniform, yet the great current of authority is to the effect that a mere irregularity in the manner of selecting a grand juror, when the ground of objection does not question the competency or fairness of the juror, can not be taken advantage of by the plea in abatement.

A mere irregularity, or a nonobservance of some directory provision of law, is not available on a plea of abatement. 1 Whar. Cr. Law, s. 472 *n*; 2 Abb. Ct. App. 229; *Friery* v. *People*, 2 Keyes, 453; *State* v. *Brooks*, 9 Ala. 10; *Vanhook* v. *State*, 12 Tex. 252; *U. S.* v. *Blodgett*, 35 Ga. 336; *Lee* v. *State*, 45 Miss. 114; *People* v. *Jewett*, 3 Wend. 314; *U. S.* v. *White*, 5 Cranch C. C. 457; *State* v. *Gillick*, 7 Iowa, 287; *People* v. *Manahan*, 32 Cal. 68; *State* v. *Rickey*, 5 Halstead (N. J.) 83.

Fourth. But the plea is bad in substance and in its merits. It is apparent from it that seventeen regularly drawn and legally competent jurors acted in finding the indictment and, so far as appears, all of them voted in favor of the bill. If the contrary was true, it should have been alleged. The presence of Ellis was entirely immaterial and unprejudicial. *State* v. *Brainerd*, 56 Vt. 532.

Fifth. The plea is bad in substance. Ellis was not only competent, but was lawfully drawn. By the common law, the court in its discretion could discharge disqualified jurors, and direct the sheriff to summon others.

By 3 Hen. VIII. Chap. 12, it was among other things enacted that all panels of grand jurors " should be reformed by putting to and taking out the names of the persons so to be impanelled, by the discretion of the same justices before whom such panels shall be returned, and that the same justices shall command every sheriff, to put other persons in the same panels by their directions, and that the same panels so reformed by the said

justices be good and lawful." Bacon's Abridgment, tit. Juries (A). This unrepealed statute is a part of our common law, and is undoubtedly the origin of the practice in this State.

The opinion of the court was delivered by Ross, J.

I. The motion to quash was properly overruled. It is based upon matters not appearing upon the record. It rests wholly on extrinsic facts, which could only be proved by parol evidence. No plea can be made to, and no issue joined upon, such a motion. It is an inappropriate mode of bringing such facts before the court. It should be founded upon facts appearing of record, or admitted and shown by the plaintiff's own proofs. *State* v. *Haynes*, 35 Vt. 565; *State* v. *Intoxicating Liquor*, 44 Vt. 216; *Waterford* v. *Brookfield*, 2 Vt. 200; *Culver* v. *Balch*, 23 Vt. 618; *Barrows* v. *McGowan*, 39 Vt. 238; *Landgrove* v. *Plymouth*, 52 Vt. 503.

II. The plea in abatement was clearly insufficient. It is lacking in the certainty required in such a plea. It is also defective in presenting several issuable facts, disjunctively, by the use of "or" as pointed out in the brief for the prosecution. Such pleading would multiply indefinitely the issues involved in a case, and lead to confusion and perplexity, instead of eliminating all extraneous matter, and narrowing the pleadings to a single determinative issue, which is the crowning merit of common-law pleading. The counsel for the respondent do not seriously contend that the plea is technically sufficient when judged by the rules of the common law, but contend, that strict technical accuracy should not be required; that it should be sufficient if the plea states the objection in plain, unambiguous language, and cite authorities in support of such rule. But the common-law rules have never been relaxed in this State, except by force of statute; and we have no statute relative to this class of pleading. The authorities cited are mostly from states in which the common-law practice does not prevail, and are not authority in this State. But it is unnecessary to give much attention to the technical form or

substance of the plea.  The counsel on both sides desire the opinion of the court upon the facts in substance, set forth in the plea and affidavits.  The question thus presented is of practical importance, and has been considered carefully, although the case might be disposed of on the views already expressed. On the facts embodied in the plea and affidavits, the question is raised, whether in organizing and directing the proceedings of the grand jury, the County Court has any discretionary power to excuse jurors for causes not especially provided for in the statute, and to fill their places by ordering the sheriff to call talesmen.  This was in effect what was done and is complained of by the respondent.  This assumes that Hoffman was not disqualified by the Act of 1884.  The prohibition of service by that Act is for two years from the time the juror was first drawn.  A little more than two years had elapsed since the juror was before drawn, but not since he before served.  There was a reasonable question whether the statute did not mean that two years should intervene between the terms of service.  When this statute was called to my attention, I thought it was safer to excuse the juror, than to incur the risk of his being held disqualified under that Act, and so excused him and caused his place to be filled by a talesman (called by the sheriff), who was qualified to act as grand juror, if properly returned as such.  I then thought as we now hold, that the statute, in terms, did not disqualify Mr. Hoffman from serving.  Hence, if the court had no discretionary power in excusing him and ordering the sheriff to call a talesman, the action was erroneous.  The prosecution contend that the objection to the discharge of Hoffman, and to the substitution of Ellis, relates only to the technical method of selecting the latter, and not to his competency.  Such is the objection.  It is nowhere alleged in the plea, nor stated in the affidavits which are referred to, and made a part of the plea, that Ellis was incompetent to act in the capacity of a grand juror, if properly selected and returned to the court.  The prosecution has cited a number of authorities which hold that such an

objection, by one bound up to the County Court to answer to such things as may be presented against him by the grand jury, is waived, if not taken advantage of in the organization of the grand jury; that the respondent should have challenged the grand juror or the array, when Hoffman had been discharged and Ellis substituted in his place. The decisions cited were controlled by statute, in some cases, and some cases are claimed to rest on the common law. But such a practice has never prevailed in this State, and has never been generally understood to exist. We think the better opinion is, that it did not exist at the common law. *Thompson & Merriam* on Juries, s. 507, *et sequens*. A passage in Hawkins' Pleas of the Crown seems to support the existence of the right (2 Hawk. P. C. 25, s. 16), but the correctness of this passage and the right were denied by the Court of King's Bench in Ireland on full discussion in 1811. 31 How. St. Tr. 543. Such has been the holding of the Supreme Court of Connecticut in a late case. *State* v. *Hamlin*, 47 Conn. 95. The early leading jurists in this State came from, and were educated in Connecticut, and gave to our State early laws and practice largely like those which existed in that State. The exercise of such right is attended with many inconveniences, if not inconsistences. The proceedings of the grand jury are secret, and many indictments are found against persons against whom no antecedent proceedings have been taken. It cannot well be held that a person who did not know that any proceedings were likely to be had against him before the grand jury, by failure to object at the organization, waives any irregularity in the method of the selection, return, or organization of the grand jury. Neither is it quite consistent to hold that a person bound up to answer to such indictment as the grand jury might find against him, should before, or at the organization, object for irregularities in the method of selecting, returning and organizing the grand jury, or be held to waive the objection, when he has no right to be heard before that body in the proceedings there to be taken against him. We think that it

State *v.* Ward.

is the better, and more consistent practice which has hereto-
fore, universally, so far as we are aware, prevailed, that such
objections are not waived by one, bound up, by a failure to
insist upon them at the organization of the grand jury, but that
they may and must be taken advantage of by a plea in abate-
ment before, or at the time, the accused first pleads to the
indictment. As to irregularities in drawing, and disqualifica-
tions of petit jurors, which are somewhat analogous, see *Briggs*
v. *Georgia*, 15 Vt. 61 ; *Mann* v. *Fairlee*, 44 Vt. 672 ; *Quinn*
v. *Halbert*, 52 Vt. 353. A general plea to the indictment upon
its merits would be inconsistent with, and a waiver of such
dilatory plea. Hence, the question remains, had the County
Court the right, in the exercise of its sound discretion, to dis-
charge Hoffman under the circumstances, and cause Ellis to be
substituted in his place ? The objection to the exercise of this
right, by the respondent, seems to rest somewhat on the ground
that he had the right to have Hoffman act in that capacity. It
was early, and recently, held by this court, that a party in a
civil suit had no right to have one competent juror, first called,
sit in his case, rather than another, and that he could not affirm
that he had been legally injured by the substitution of one
competent juror for another, in the reasonable discretion of the
court. *Phelps* v. *Hale*, 2 Tyler, 401 ; *Quinn* v. *Holbert*, 57 Vt.
178. The action of the petit jury is much more binding and
important in both civil and criminal cases, than is the action of
the grand jury. The action of the former is in many respects
final, while that of the latter is only initiatory. It would seem
that the court should be more restricted in the exercise of the
discretionary right to excuse a competent petit juror, and sub-
stitute another, than in the exercise of that right in relation to
the grand jury. It has been the uniform practice of courts in
this State to exercise this discretionary right and power in
impanelling the petit jury in the trial of both civil and crimi-
nal cases. It is a discretionary right and power, like all other
kindred rights and powers, to be exercised in good faith, with
good judgment, in the furtherance of justice, but never capri-

ciously; or arbitrarily, or for the furtherance of injustice. So far as informed the same discretionary right and power has been exercised in impanelling the grand jury. I am informed by Judge BARRETT that he always exercised it, and in so doing followed the, to him, well-known practice of Judge COLLAMER and Chief Justice REDFIELD. Judge POLAND, lately deceased, said that the practice had existed unquestioned, during the fifty or more years which he was conversant with the practice of the courts of the State. No decision is to be found denying the right and power. In many, it is indirectly recognized. *State* v. *Brainerd,* 56 Vt. 536; *State* v. *Cox,* 52 Vt. 471; *State* v. *Champeau,* 52 Vt. 313; *State* v. *Gravelin,* unreported Windsor Co. case. In *State* v. *Champeau,* it is plainly intimated, if irregularity enters into the drawing, or empanelling, of the grand jury, it must be shown to work a wrong or injury to be available. In *State* v. *Gravelin,* a petition for a new trial was prosecuted, in which it was shown, that a grand juror who acted in finding the indictment and a petit juror who participated in finding the respondent guilty of murder, were irregularly, and without the authority of law, drawn and summoned from the town of Chester, in that the person who drew and summoned them was a mere volunteer, wholly unauthorized to act in that behalf; and yet the petition was denied, the persons drawn being competent to serve in their respective capacities. In *Mann* v. *Fairlee,* 44 Vt. 672, the same doctrine was held in regard to summoning a petit juror. It is the duty of the court to order the drawing and summoning of both the petit and grand jurors, and to duly impanel them. This duty imposes on the court a responsibility which calls for the exercise of sound judgment and discretion. It has been generally held that the court charged with the duty of impanelling, either the petit or grand jury, was clothed with a discretionary power, in furtherance of justice, to excuse a competent juror regularly drawn, and to order a talesman called to fill his place; and that the exercise of such discretion is not revisable. Many circum-

stances may arise, such as the sickness or infirmity of the juror, or of some member of his family, or of some near friend, or some emergency in his business or property, which require the exercise of this discretionary power, to secure intelligent and careful deliberation and determination of questions involving the highest rights of property, of liberty and of life. Its exercise also frequently becomes necessary to accord to persons called to serve as jurors the commonest civilities. It has been generally exercised in favor of both grand and petit jurors. Thompson & Merriam on Juries, ss. 259 and 580, et seq.

There must be the same right to fill the place of the juror so excused as there is to excuse him. The one right involves the other, unless otherwise provided for. Otherwise a legal jury of either kind could not always be obtained. If such excuses should not reduce the number of the grand jury below a working quorum, they presumably reduce the strength and efficiency of a full panel, which the statute has given for the protection of the accused and of the State; of the accused, if innocent; and of the State, if he is guilty. If the number of the grand jury should be reduced to twelve, and the twelve should find, or fail to find an indictment, it does not follow that the action of the twelve would be the same, if aided by the counsels and deliberations of the other six required by the statute. To secure the full rights of the accused and of the State a full panel of grand jury should be secured when possible. This discretionary right and power should never be exercised arbitrarily, or without reason. Whether it comes to us, as a part of the common law, from 3 Hen. VIII. Chap. 12 as might appear, and as contended by the attorney for the prosecution (Bac. Abr. Juries A), need not be determined. It has been the recognized right of the court as practiced, so far as revealed by the reported decisions, and so far as the memory of the oldest practitioners can inform us, for nearly a century. In the meantime there has been no substantial change of the provisions of the statute relating to this subject. Tolman's Com. p. 79, s. 63; R. L. ss. 895 and 897. Such

State *v.* Ward.

long and well-established practice, unquestioned by any decision of the court, and uninvaded by an act of the legislature should not be disturbed, because the courts of some other states, controlled more or less by code or statute, have held otherwise. If any serious inconvenience were to flow from it, it would have been made manifest long before now, and have been modified by proper legislation.

The result is that the respondent takes nothing from his exceptions, and the cause is remanded.